**Darlene SMITH, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**C. Patrick BABCOCK, Director Michigan Department of Social Services, Defendant.**

**Civ. A. No. 89–CV–73752–DT.**

United States District Court, E.D. Michigan, N.D.

Oct. 5, 1990.

Jacqueline Doig, Midland, Mich., for plaintiff.

Janis Meija, Lansing, Mich., for defendant.

OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, GRANTING PLAINTIFF'S MOTION FOR CLASS-WIDE PRELIMINARY INJUNCTIVE RELIEF, AND, SUA SPONTE, GRANTING FINAL DECLARATORY AND INJUNCTIVE RELIEF

ROSEN, District Judge.

This action challenges, as a violation of federal law, the Michigan Department of Social Services' ["DSS"] policy of applying a "Deduction Penalty" to certain families receiving Aid to Families with Dependant Children ["AFDC"]. Plaintiff, Darlene Smith, initially brought this action on her own behalf seeking declaratory and injunctive relief. Plaintiff was subsequently allowed to amend her complaint to include a class action.

Presently before the Court are Plaintiff's Motion for Class Certification and Motion for a Classwide Preliminary Injunction. Both Motions were referred to Magistrate Charles E. Binder pursuant to a special order of reference. The Magistrate issued a separate Report and Recommendation for each motion recommending that each be granted. Defendant filed objections to the Magistrate's findings and recommendations thereby bringing this matter before this Court for review.

## I. FACTS

### Overview of the Legal Claim

Under the DSS' written Deduction Penalty policy which is challenged in this case, a family will not be given the benefit of certain earned income deductions, or "disregards"[1] when its monthly AFDC grant is calculated if a member of the family terminated employment, refused employment, or reduced earnings in the month the income was earned. (DSS Program Eligibility Manual item 518, pp. 16–18.)

1. "Disregards" are typically the costs associated with employment, such as child care and transportation. The disregards are used to offset "earned income" in the calculation of AFDC benefits. "Earned Income", actual income from work, is itself a direct deduction from AFDC benefits awarded. Thus disregards constitute deductions *from* deductions. All of these amounts are calculated every month by the DSS to determine one month's benefits.

The DDS' Deduction policy is, however, inconsistent with Title IV–A of the Social Security Act, 42 U.S.C. Section 602(a)(8)(B)(i). Under the federal statute, the AFDC earned income disregards must be applied to each month's earnings unless, *inter alia*, the individual terminated his employment, refused a job offer, or reduced his income in a time period (not less than 30 days, as prescribed by the Secretary of Health and Human Services ["HHS"]) *preceding* the month that the income was earned. 42 U.S.C. § 602(a)(8)(B)(i).

Similarly, by regulation, the Secretary of Health and Human Services has authorized state welfare agencies to disallow earned income disregards if an individual terminated his employment, refused to work, or reduced his earnings "within the period of 30 days *preceding* such month". *See* 45 C.F.R. § 233.20(a)(11)(iii)(A) (emphasis added).

Plaintiff claims that the state's Deduction Penalty policy violates the Federal statute and regulation by denying earned income disregards for income received during the *same* month as the termination, reduction or refusal of employment.

### The Named Plaintiff

Ms. Smith and her 4 minor children receive AFDC. In January 1989, Ms. Smith quit a job as a nurse's aid and reported the job quit to the Saginaw County Department of Social Services. The Department determined that Ms. Smith's reasons for quitting the job did not meet its definition of "good cause" and, therefore, applied the Deduction Penalty to the earnings Ms. Smith received in January 1989.

Monthly AFDC grants in ongoing cases are calculated prospectively, with one month's income determining the amount of the AFDC grant two months hence. Therefore, in February 1989, Ms. Smith received a notice from the DSS informing her that her March AFDC grant would be only $301, less than half her usual monthly benefit, because the earned income disregards would not be applied to her earnings received in January 1989—the month she quit her job.

Ms. Smith requested a hearing on the reduction of her AFDC benefits, as she was entitled under *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Ms. Smith's grant was not reduced pending the outcome of her administrative hearing. At her hearing, Ms. Smith raised her claim that the Deduction Penalty policy violates federal law, and the Administrative Law Judge agreed (apparently on different grounds than those raised by Ms. Smith). The Defendant's Policy Hearing Authority, however, determined that the Deduction Penalty policy was valid and should have been applied to reduce Ms. Smith's AFDC grant to $301 in March 1989.

Because Ms. Smith's AFDC grant for March, 1989 was not reduced while she was pursuing her administrative appeal, she was charged with an overpayment of $375 [2], pursuant to federal regulations requiring the recovery of AFDC overpayments. 45 C.F.R. 223.20(a)(13). DSS notified Ms. Smith that it would begin to reduce her AFDC grant by 5% beginning in July 1989, to recoup the overpayment, resulting in a drop in her AFDC grant from $683 per month to $648.85 per month until the alleged overpayment was repaid. As a result of a Preliminary Injunction entered by consent in this case, this temporary reduction of Ms. Smith's AFDC grant has been stopped pending the outcome of this case.

### The Proposed Class

Plaintiff has moved this court to certify a class defined as:

"[A]ll past, present or future AFDC recipients in Michigan who have been, or in the future will be, denied earned income disregards for income earned in a month that they terminate or refuse employment or reduce their earned income with-

---

**2.** The $375.00 claimed "overpayment" constitutes the difference between the benefits claimed by Smith for March, 1989, and the amount awarded by DSS under its current poli-cy for the same month. The Plaintiff received a total of $683.00 in March, 1989, as in other months. The DSS' policy did not affect Smith's benefits for other months.

out good cause, on account of the termination, reduction or refusal."

By its terms, the class includes all AFDC recipients who are, or will be, subject to the application of Defendant's Deduction Penalty policy.

Plaintiff has presented evidence of DSS statistics which reveal that approximately 28,000 AFDC families in Michigan include at least one wage earner. Plaintiff has also presented records of DSS Hearing Decisions which demonstrate that at least 51 families receiving AFDC and working had quit or refused employment without good cause in the 20–month period prior to the filing of Plaintiff's Motion for Certification.

## II. THE MAGISTRATE'S REPORT AND RECOMMENDATIONS

### A. MOTION FOR CLASS CERTIFICATION

In his Report and Recommendation on Plaintiff's Motion for Class Certification, Magistrate Binder noted in his report that the defendant chose to contest *only* the numerosity requirement of FED.R.CIV.P. 23(a), expressly conceding the other requisites of commonality, typicality and adequacy under Rule 23(a)(2)–(4). As a result, Magistrate Binder prefaced his report with the acknowledgement that all that is necessary for certification is for Plaintiff to show (1) numerosity, under Rule 23(a)(1), and (2) that the DSS has acted or refused to act on grounds applicable to the entire class under Rule 23(b)(2). The Magistrate then recommended to this Court that both these requirements have been satisfied and that the Plaintiff's motion to certify the class as defined in Plaintiff's First Amended Class Action Complaint be granted.

In determining that Plaintiff's class has met the numerosity requirement of Rule 23(a)(1), the Magistrate concluded that, although a strict numerical amount of members of the class have not been defined by Plaintiff, the unknown and future members of the class are sufficient to make joinder impracticable. (Report and Recommendation p. 8). Additionally, the Magistrate indicated that the hearing decisions presented by Plaintiff identify 6 cases involving 16

people in which the challenged policy was applied. The Magistrate then concluded that this number alone is enough to satisfy the numerosity requirement of Rule 23(a)(1), citing *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.1976), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). (Report and Recommendation, p. 9).

### B. MOTION FOR A CLASSWIDE PRELIMINARY INJUNCTION

In recommending that Plaintiff's Motion for a Classwide Preliminary Injunction be granted, the Magistrate stated that Plaintiff has satisfied the requisite test—namely, Plaintiff has shown:

1. A strong or substantial likelihood of success on the merits;

2. Irreparable injury;

3. The issuance of a preliminary injunction would not cause substantial harm to others; and

4. The public interest would be served by issuing a preliminary injunction.

## III. DISCUSSION

■ Pursuant to the Magistrate's Act, 28 U.S.C. § 636(b)(1), this Court is to review *de novo* those portions of the Magistrate's Report and Recommendation to which objection is made. *United States v. Shami*, 754 F.2d 670 (6th Cir.1985). As set forth in Section 636 of the Magistrate's Act, in reviewing a Report and Recommendation this Court may, in its discretion, accept, reject, or modify the Report and Recommendation in whole or in part, and may also receive further evidence on the matter. Since the gist of Defendant's objections is that the Magistrate based his conclusions, and, thus, his recommendation, on an erroneous conception of the circumstances under which the challenged policy applies and the manner in which the policy operates, *de novo* review of this matter is appropriate.

### A. PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

■ After a review of the facts of this case, the applicable law, and Defendant's

objections, this Court agrees with the Magistrate's Report and Recommendation that Plaintiff's Motion for Class Certification should be granted based on his finding that the unknown and future members of the proposed class meets the numerosity requirement of Rule 23(a)(1) [3] and that this case satisfies the requirements of Rule 23(b)(2), since the Defendant has acted or refused to act on grounds applicable to the entire class. Accordingly, the Court will adopt the Magistrate's Report and Recommendation. However, because this Court disagrees with portions of the Magistrate's analysis concerning the Rule 23(a)(1) numerosity requirement, the Court will address that issue in detail.

■ The Magistrate's ultimate conclusion that the class is sufficiently numerous is supported by the case law in this Circuit. In this Circuit, "[t]he numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large even if plaintiffs do not know the exact figure". *In re Consumers Power Company Securities Litigation*, 105 F.R.D. 583, 601 (E.D.Mich.1985). It has also been held that when ruling on a class action "a judge may consider reasonable inferences drawn from the facts before him at that stage in the proceedings." *Senter*, 532 F.2d at 523.

As evidence of numerosity, Plaintiff has introduced DSS statistics which indicate that approximately 28,000 AFDC families in Michigan have earned income. Plaintiff

has also produced DSS hearing decisions which demonstrate that at least 51 families receiving AFDC and working had quit or refused employment without good cause in the 20–month period prior to the filing of this action by Plaintiff. Defendant does not contest these figures but, rather, argues that they do not represent the true number of AFDC recipients potentially threatened by the application of the challenged policy. As proof, Defendant points out that out of the 51 families identified by Plaintiff as having quit their jobs without good cause, only 2 involved the application of the challenged policy.[4] The rest were subject to alternative sanctions under the Michigan Opportunity Skills Training ["MOST"] program.

Defendant's argument, however, even if accepted as accurate, does not address the number of AFDC families who quit or refused employment without good cause who are not represented in DSS Hearing Decision records. As Plaintiff points out, the 51 families identified in DSS Hearing Decision records as having quit or refused employment without good cause only represent the "tip of the iceberg" (Plaintiff's Reply Brief. p. 8). These decisions only represent the number of families who appeal a finding of "no cause" by the DSS. Many more families undoubtedly exist who chose not to appeal such a finding either because they did not believe they had the grounds to appeal or because they were

---

**3.** The court specifically rejects Magistrate Binder's finding that the number of *known* class members is sufficient, by itself, to satisfy the numerosity requirement. The Magistrate's reliance on *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.1976) for the proposition that a class of 16 people meets the numerosity requirement of Rule 23(a)(1) is misplaced. A review of *Senter* reveals that while the plaintiff in that case had only specifically identified sixteen (16) people to the proposed class, the court's decision to certify was not based on this number. Rather, the Court inferred from the scope of the proposed class that a substantial number of individuals were includable in the class and that their joinder would be impracticable. Therefore, even if this court were to accept the Magistrate's finding that the DSS Hearing Decisions identify sixteen (16) AFDC recipients who were subject to the challenged policy, such a number is insufficient under the

law in this Circuit to satisfy the numerosity requirement. See *Kornbluh v. Stearns & Foster Co.*, 73 F.R.D. 307 (S.D.Ohio 1976) (55 members sufficient); *Sweet v. General Tire and Rubber Co.*, 74 F.R.D. 333 (N.D.Ohio 1976) (class of 612 parties found sufficient); *International Union v. Acme Precision Products, Inc.*, 515 F.Supp. 537, 540 (E.D.Mich.1981) (class of 78 members held sufficient); *Michigan State Univ. Faculty Ass'n. v. Michigan State Univ.*, 93 F.R.D. 54, 56 (W.D. Mich.1981) (class of 319 members found sufficient).

**4.** The actual number of AFDC recipients identified by the Hearing Decisions as being subject to the challenged policy is in dispute. Plaintiff claims that the decisions identify as many as 5 or 6 families totaling 16 or 17 individuals which were subject to the challenged policy.

unable or unwilling to pursue an appeal. See *Ingram v. O'Bannon,* 88 F.R.D. 653 (E.D.Pa.1980).

In *Ingram,* as in the instant case, plaintiffs challenged state policy on administration and delivery of welfare services. In certifying plaintiff's proposed class, the court held the numerosity requirement had been satisfied based in part on its finding that a substantial number of eligible class members were unidentifiable since the state welfare records did not represent all of those who had applied for the challenged services. *Id.,* at 656.

Further, Defendant's argument fails to address the fact that an increasing number of AFDC recipients will be subject to the challenged policy in the future due to the recent decision in *Boettger v. Bowen,* 714 F.Supp. 272 (E.D.Mich.1989), which bars the application of MOST sanctions in "no cause" cases when the job quit or refused was the result of self-initiated employment. This potential number of future class members may, alone, be sufficient to support a finding of numerosity under the Rule. *Davis v. Lukhard,* 591 F.Supp. 319 (E.D. Va.1984), *rev'd on other grounds,* 788 F.2d 973 (4th Cir.1986).

In *Davis,* AFDC applicants brought an action seeking declaratory and injunctive relief, as well as damages, alleging that the Virginia Department of Social Services' policy of including all resources, regardless of availability, when determining eligibility for AFDC benefits was in violation of the federal Social Security Act. Plaintiffs sought to certify a class of all persons who have been excluded from participation, or who will be in the future excluded from participation, in the Virginia AFDC Program, because they were members of households which possess non-liquid resources that cannot be used to meet the current needs of the household. Although plaintiffs failed to produce any real evidence of the size of the proposed class, the court held that the numerosity requirement was met based upon the number of applicants who would be subjected to the policy in the future. Specifically, the court stated that, "even if the named plaintiffs were at present the only individuals affected by [the challenged policy], it is inexorable that as months and years go by more and more individuals will be added to this class and it would be well to dispose of the matter for once and all." *Id.* at 323–24.

In the present case, the Court concludes that the evidence presented is more than adequate to support a reasonable inference that the number of unknown and future members of the proposed class is sufficient to make joinder impracticable. This is particularly true in light of the nature of the relief sought by Plaintiff. Many courts have held that where the relief sought is declaratory and/or injunctive in nature, the requirement that the class is so numerous as to make joinder impracticable is relaxed. *Westcott v. Califano,* 460 F.Supp. 737 (D.Mass.1978), *aff'd on other grounds,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979); *Leist v. Shawano County,* 91 F.R.D. 64 (E.D.Wis.1981); *Doe v. Charleston Area Medical Center Inc.,* 529 F.2d 638 (4th Cir.1975) (where relief sought is declaratory and injunctive, even speculative and conclusory representations as to the size of the class have been held adequate to meet the numerosity standard).

█ In addition to numerical evidence, the Magistrate's finding that the number of unknown and future members of the proposed class satisfies the numerosity requirement is supported by the lack of readily identifiable class members. While Rule 23(a)(1) is often referred to in terms of numerosity, it is, more appropriately, an "impracticability" requirement. *Davis v. Lukhard,* supra. As such, many courts have held that when a proposed class is fluid in nature or involves future members who are presently unidentifiable, joinder is impracticable under Rule 23(a)(1). *Jack v. American Linen Supply Co.,* 498 F.2d 122 (5th Cir.1974); *Bacon v. Toia,* 437 F.Supp. 1371 (S.D.N.Y.1977), *aff'd without opinion,* 580 F.2d 1044 (2nd Cir.1978); *Massachusetts Ass'n. of Older Americans v. Spirito,* 92 F.R.D. 129 (D.Mass.1981); *Weaver v. Reagen,* 701 F.Supp. 717 (W.D. Mo.1988), *modified,* 886 F.2d 194 (8th Cir. 1989), *reh. denied.*

In *Weaver, supra,* for example, plaintiff brought suit and sought class certification challenging Missouri Medicaid rules, which refused to place the drug, AZT, on the Missouri drug list, thereby, denying patients suffering with AIDS Medicaid funds to purchase treatment with AZT. Plaintiff sought to enjoin defendants from continuing to deny coverage to Medicaid recipients for treatment with AZT and sought to certify a class consisting of:

"All persons in Missouri who would have or will be determined eligible for Medicaid, and who are infected with the Acquired Immune Deficiency Syndrome (AIDS) virus (Human Immuno–Deficiency Virus) and whose physicians have or will in the future prescribe the drug, Retrovir, for their treatment."

*Id.,* 701 F.Supp. at 721.

At the time of suit, there were at least 61 Medicaid recipients in Missouri who were infected with the AIDS virus and who had requested Medicaid coverage for AZT. Of those recipients, only four were denied coverage because they failed to meet defendant's criteria. Plaintiff, however, sought to represent all persons with AIDS who will be denied Medicaid coverage for AZT in the future, not only those persons with AIDS who were currently denied Medicaid coverage for AZT. Since those recipients who would be denied Medicaid coverage in the future were unidentifiable, the court held that their joinder was impracticable and the numerosity of Rule 23(a) was satisfied. *Id.,* at 721.

In summary, the Court concludes that the Rule 23(a)(1) numerosity requirement has been satisfied here, and, therefore, the Plaintiff's proposed class will be certified.

### B. PLAINTIFF'S MOTION FOR A CLASSWIDE PRELIMINARY INJUNCTION

Again, after a review of the facts of this case, the applicable law and Defendant's objections, this Court is in agreement with the Magistrate's conclusion that Plaintiff has satisfied the requisite test for the is-suance of a preliminary injunction—namely Plaintiff has shown:

1. A strong or substantial likelihood of success on the merits;

2. Irreparable injury;

3. The issuance of a preliminary injunction would not cause substantial harm to others; and

4. The public interest would be served by issuing a preliminary injunction.

However, in adopting the Magistrate's report and recommendation that Plaintiff's Motion for a Classwide Preliminary Injunction be granted, the Court believes it should amplify upon the Magistrate's findings as to Plaintiff's likelihood of success on the merits and the existence of irreparable harm.

1. *Plaintiff has demonstrated a strong or substantial likelihood of success on the merits.*

■ The Plaintiff representative has alleged that the Michigan Department of Social Services' policy of applying a "Deduction Penalty" to certain AFDC families is a violation of federal AFDC legislation and regulations. The federal AFDC program was established by Title IV of the Social Security Act. It is a program based upon a scheme of "cooperative federalism." *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *See also* Advisory Commission Report on Intergovernmental Relations, Statutory and Administrative Controls Associated with Federal Grants for Public Assistance 1–59. That is to say, the program is financed largely by the federal government, on a matching funds basis, and is administered by the states. While under this scheme, "there is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits,' *King v. Smith,* 392 U.S. 309, 318–319, 88 S.Ct. 2128, 2134, 20 L.Ed.2d 1118, 1126 (1968), it is just as certain that a participating State, under Title IV, must abide by federal directive where Congress has cho-

sen to speak in mandatory terms"[5] *McGraw v. Berger,* 410 F.Supp. 1042, 1047 (S.D.N.Y.1976), *aff'd,* 537 F.2d 719 (2nd Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). *See also, Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *Koster v. Webb,* 598 F.Supp. 1134 (E.D.N.Y.1983).

Title IV of the Social Security Act provides for the disregard of certain income when calculating an AFDC recipient's monthly AFDC benefits as an incentive for recipients to seek gainful employment. 42 U.S.C. § 602(a)(8); *Johnson v. Likins,* 568 F.2d 79 (8th Cir.1977); *X v. McCorkle,* 333 F.Supp. 1109 (D.N.J.1970), *aff'd Engelman v. Amos,* 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971). The Act expressly provides that a participating state *"shall"* apply the proffered disregards to each month's earnings unless, *inter alia,* the individual terminated his employment or reduced his earned income without good cause within such period (of not less than thirty days) *preceding* such month as may be prescribed by the Secretary. *See* 42 U.S.C. Sections 602(a)(8)(A) and (B)(i) (emphasis added).

■ By regulation, the Secretary of Health and Human Services has authorized state welfare agencies to disallow earned income disregards for the month in which an individual "terminated his employment or reduced his earned income without good cause (as specified in the state plan) within the period of 30 days *preceding* such month". 45 C.F.R. 233.20(a)(11)(iii)(A) (emphasis added).

Thus, by statute and regulation, a State agency is authorized to disallow disregards on earned income only in the month (or 30 day period) *following* a recipient's decision to quit, refuse, or reduce his or her employment without good cause[6]. DSS' policy of disallowing earned income in the *same* month as employment is quit, refused or reduced without good cause (DSS Program Eligibility Manual, Item 518, pp. 16–19) is clearly inconsistent with the federal directive and must consequently yield to the federal directive under the Supremacy Clause of the U.S. Constitution, *Townsend v. Swank, supra; Holley v. Lavine,* 553 F.2d 845 (2nd Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1971).

2. *Plaintiff has demonstrated that class wide harm will result from the application of the challenged policy.*

■ The Magistrate states in his report that potential class members face irreparable harm because "a failure to pay benefits could result in the repossession of a home, a loss of items purchased on credit, or the failure to attend to medical needs." In objecting to this finding, Defendant makes a good argument that the application of the Deduction Penalty policy will not result in denial of access to medical care by pointing out that Medicaid continues to cover medical expenses even if earned income disregards are disallowed.

Defendant also argues that the Deduction Penalty policy will not result in other irreparable harm due to the availability of the Michigan Department of Social Services' Emergency Need Program ["ENP"]. This argument, however, fails to recognize the many limitations on the availability of ENP funds. As Plaintiff points out in her response to Defendant's objections, for cer-

---

**5.** States which choose to participate in the federal AFDC program must submit a plan for the approval of the Secretary of Health and Human Services. However, approval of a state plan by the Secretary does not preclude adjudication by federal courts of claims by AFDC recipients that the state plan is in violation of the federal AFDC statute and regulations. *Francis v. Davison,* 340 F.Supp. 351 (D.Md.1972), *aff'd,* 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972); *Banner v. Smolenski,* 315 F.Supp. 1076 (D.Mass.1970). *See also King v. Smith, supra.*

**6.** The practical effect of the federal directive is to render an AFDC recipient ineligible to receive disregards on earned income in the month following his decision to quit, refuse, or reduce his employment without good cause. In other words, if an AFDC recipient were to become actively employed in the month following his decision to quit or refuse work without good cause, he would be ineligible to receive disregards on income earned in that month when calculating his monthly AFDC benefits.

tain necessities such as heat, electricity, water, and rent or house payments, ENP is a once-in-a-lifetime program. (*See* Dept. of Social Services Emergency Needs Manual Item 402.)

The ENP rental payment policy is a good example of the limited availability of ENP funds. In order to qualify for ENP for rent when faced with an eviction for non-payment of rent, the family generally must establish

1. It has not received ENP for rent before (i.e. this is not a "repeat request") and

2. The family has received a Summons or a court order for eviction and

3. The amount of the monthly rent arrearage is within a specified dollar amount (depending on family size) of the family's AFDC shelter allowance (e.g. no more than $305 per month rent for a family of five in Saginaw County).

(*See* Department of Social Services Emergency Needs Manual Items 402 and 503). Thus the Defendant's Emergency Needs Program does not ensure that irreparable harm will not occur. The Court therefore concludes that the Plaintiff has met her burden of proving that she will suffer irreparable harm if the preliminary injunction is not granted.

## C. FINAL DECLARATORY AND INJUNCTIVE RELIEF

In addition to the relief granted herein, the Plaintiff, in her Complaint, seeks final declaratory and injunctive relief: 1) declaring that the Defendant's policy of disallowing disregards in the same month during which employment is quit, refused, or reduced without good cause is invalid, under the Supremacy Clause of the United States Constitution, because the policy is inconsistent with the federal statute, 42 U.S.C. Sections 602(a)(8)(A) and (a)(8)(B)(i), and the regulation, 45 C.F.R. 233.20(a)(11)(iii)(A); and 2) permanently enjoining the Defendant from enforcing this policy. As discussed fully in part III(B)(1) of this Opinion, above, the Court has found, as a matter of law, that the Defendant's policy violates the Supremacy Clause and is, therefore, unconstitutional and invalid.

Second, the Court has found, in Part III(B)(2) of this Opinion, that enforcement of the Defendant's policy in her case would cause the Plaintiff to suffer an irreparable injury.

Further, the Court has, in Part III(A) of this Opinion, resolved the factual disputes in this case, all of which relate to the Plaintiff's Motion for Class Certification.

Consequently, there remain no genuine issues of material fact—and no unsettled legal issues, for that matter—which would preclude the Court from granting summary judgment in favor of the Plaintiff, under FED.R.CIV.P. 56. Further, FED.R.CIV.P. 65(a)(2) authorizes the Court to consolidate preliminary injunction proceedings with the final trial on the merits. Accordingly, the Court finds that it is appropriate at this time to grant the final declaratory and injunctive relief requested by the Plaintiff in her Complaint. The Court will therefore render final judgment in favor of the Plaintiff on the basis of this opinion.

## D. PLAINTIFF'S REQUEST FOR COSTS AND ATTORNEYS' FEES

The Plaintiff, in her Complaint, further requests that the Court award her costs and attorneys' fees pursuant to 42 U.S.C. Section 1988. However, neither of the parties has yet addressed the propriety of such an award in the instant action. As a preliminary matter, the Court notes that it is unclear whether this type of action comes within the scope of Section 1988. For these reasons, the Court cannot make a determination, at this time, whether it is proper to award the Plaintiff's costs and attorneys' fees, and if so, in what amount. Therefore, the Court will defer decision on this issue pending the Plaintiff's submission of an appropriate bill of costs and motion for award of costs and fees.

## ORDER

For the reasons stated herein, and the Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that a class of plaintiffs for the above entitled action be certified, under FED.R.CIV.P. 23(b)(2),[7] as follows:

All past, present, or future AFDC recipients in Michigan who have been, or in the future will be, denied earned income disregards for income earned in a month that they terminate or refuse employment or reduce their earned income without good cause, on account of the termination, reduction or refusal.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Michigan Department of Social Services' policy of disallowing disregards in the same month during which employment is terminated, refused, or reduced without good cause is unconstitutional, under the Supremacy Clause of the United States Constitution, because the policy is inconsistent with 42 U.S.C. Sections 602(a)(8)(A) and (a)(8)(B)(i), and the applicable federal regulation, 45 C.F.R. § 233.20(a)(11)(iii)(A);

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Michigan Department of Social Services, its Director, officers, agents, servants, employees, attorneys, successors and all members and persons acting in concert or participating with them are permanently ENJOINED AND RESTRAINED from engaging in the following conduct:

a. refusing to apply AFDC earned income disregards and deductions to earnings of any class member in the month the class member terminated, reduced, or refused employment without good cause, on account of the termination or refusal; and

b. taking any action to recover any money from any class member, through reduction of their AFDC grant or otherwise, on the grounds that a class member is not entitled to earned income disregards in the month the class member terminated, reduced, or refused employment without good cause.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

7. Since the Court certifies this class pursuant to Rule 23(b)(2), the notice and opportunity to "opt out" provisions of Rule 23(c)(2) and (3) are inapplicable.