Glenn C. **WEAVER**, T.G., and Mark Momot, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Michael **REAGEN**, Director of the Missouri Department of Social Services; and Jane Y. Kruse, Director of the Missouri Division of Medical Services, Defendants.

No. 87–4314–CV–C–5.

United States District Court, W.D. Missouri, C.D.

Sept. 29, 1988.

Herbert A. Eastman, St. Louis University Law School, Ann Lever, Legal Services of Eastern Missouri, St. Louis, Mo., for plaintiffs.

Missouri Atty. Gen., Jefferson City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, District Judge.

Before the Court are plaintiffs' motion for class certification, and cross-motions for summary judgment filed by plaintiffs and defendants. For the following reasons, the Court concludes that this action is properly certifiable as a class action. Additionally, the Court concludes that defendants' motion for summary judgment must be denied and that summary judgment must be entered in favor of plaintiffs.

### Factual Background

Plaintiffs Glenn C. Weaver, T.G., and Mark Momot bring this action individually and also seek certification of a class of Medicaid recipients who are unable to obtain the drug Retrovir ("AZT") under the Missouri Medicaid Programs. Plaintiffs claim that defendants' refusal to place the drug AZT on the Missouri Medicaid Drug List, or otherwise provide Medicaid coverage for the drug through defendants' exception process, violates federal regulations 42 C.F.R. §§ 440.230(b) and 440.-240(b), and 42 U.S.C. § 1983. Thus, they allege that this denial is invalid under the Supremacy Clause of the United States Constitution. Plaintiffs seek declaratory and injunctive relief for themselves and the proposed class to enable them to obtain Medicaid coverage for AZT. In other words, plaintiffs seek to enjoin defendants from continuing to deny coverage of AZT

to Medicaid recipients under the Missouri Medicaid Program.

The defendants in this action are Dr. Michael Reagan, Director of the Department of Social Services and Jane Kruse, Director of the Division of Medical Services.

The facts, as set forth in the pleadings and the affidavits filed in support of the parties' motions for summary judgment, are generally undisputed. This action was initially filed on October 5, 1987, with plaintiff Weaver being the only named class representative.

In plaintiff's initial complaint, plaintiff Weaver alleged that he was first diagnosed as suffering from Acquired Immune Deficiency Syndrome ("AIDS") in November of 1986. Plaintiff Weaver alleged that he had been determined to be eligible for Medicaid and that since that time he has suffered from a variety of medical problems resulting from AIDS, specifically pneumocystis carinii pneumonia, substantial weight loss, fevers, night sweats, and numerous infections. Plaintiff Weaver further alleged that his physician had prescribed AZT for the treatment of plaintiff Weaver's AIDS, and that plaintiff Weaver could not fill that prescription because he lacked the financial resources to pay the cost himself and Missouri's Medicaid Program would not, at that time, cover AZT for Medicaid-eligible individuals. In that first complaint, plaintiff Weaver alleged that he applied under Missouri's exception procedure for coverage of his Retrovir prescription, but that defendants would not cover Retrovir under their exception procedures. At the time this complaint was filed, the State of Missouri did not provide any Medicaid coverage for AZT.

The drug AZT is the only approved treatment for AIDS. AZT has been approved by the United States Food and Drug Administration ("FDA") as a safe and effective treatment for AIDS and is the only drug for AIDS which has been approved by the FDA. The Health Care Financing Administration has advised state Medicaid agencies to include AZT under the Medicaid program for recipients who have AIDS.

Shortly after the filing of this action, the Missouri Department of Social Services promulgated an emergency rule, which has since become a final state rule, including AZT under the Missouri Medicaid Program under certain circumstances. This rule, 13 C.S.R. 70–20.110 [Medicaid Program Coverage of Approved Drugs for Treatment of Acquired Immunodeficiency Syndrome (AIDS) ], now provides for coverage for the drug AZT as follows:

"(1) The availability of the drug Zidovudine, formerly known as Azidothymidine [AZT], for Missouri Medical Coverage shall be limited to only those eligible Medicaid recipients for whom the prescribing physician has established a medical diagnosis of acquired immunodeficiency syndrome (AIDS) and who have a history of cytologically confirmed pneumocystis carinii pneumonia (PCP) or an absolute CD4 (T4 helper/inducer) lymphocyte count of less than two hundred (200) per cubic millimeter in the peripheral blood before therapy is begun."

This language is virtually identical to FDA's approval statement for the drug.

On March 20, 1987, the FDA announced its approval of AZT for marketing under the brand name "Retrovir" by the Burroughs Wellcome Company. Missouri received notification from the Health Care Financing Administration ("HCFA") with the FDA's approval statement as follows:

"Retrovir capsules are indicated for the management of certain adult patients with symptomatic HIV infection (AIDS and advanced ARC [AIDS Related Complex] ) who have a history of cytologically confirmed Pneumocystis carinii or an absolute T4 helper/inducer lymphocyte count of less than 200/cu mm in the peripheral blood before therapy is begun."

Thus, it is undisputed that the FDA has approved the use of AZT for AIDS patients who either have a history of cytologically confirmed Pneumocystis carinii or an absolute T4 helper/inducer lymphocyte count of less than 200. It is also undisputed that the Missouri Medicaid program provides re-

imbursement for the use of AZT in patients who meet either of those criteria.

Based upon this change in position, defendants, on August 26, 1987, moved for dismissal of this action, alleging that plaintiff Weaver had become eligible as a Medicaid recipient for coverage of AZT and, thus, the action was rendered moot for lack of a case or controversy.

In response to defendants' motion to dismiss, plaintiffs filed a first amended complaint on December 8, 1987, adding plaintiff T.G., proceeding under a psuedonym and allegedly suffering from AIDS, but who did not meet the criteria set forth in Missouri's Medicaid program for coverage of the drug AZT. More specifically, the first amended complaint was identical to the original complaint except that it further alleged in ¶ 22:

> "Plaintiff T.G., who is proceeding under a pseudonym, was first diagnosed as infected with the AIDS virus in February of 1987. He has applied for and has been informed by the Missouri Department of Social Services that he is eligible for Medicaid. Since the diagnosis, he has suffered from a variety of diseases, including Kaposi's sarcoma. Plaintiff's physician has prescribed Retrovir for the plaintiff's treatment. Plaintiff cannot fill and will not be able to fill the prescription because he lacks the financial resources to pay the cost himself and Missouri's Medicaid Program does not cover Retrovir."

On May 10, 1988, defendants filed motions for summary judgment, alleging essentially two grounds in support thereof. First, defendant alleges that since plaintiff T.G. has never applied for Medicaid coverage of AZT, then there is no case or controversy between plaintiff T.G. and the defendants. As to plaintiff Weaver, defendants allege that his application has been sustained and that Medicaid is currently covering his use of AZT to the extent the drug is prescribed and taken by him. Thus, defendants argue that the case is now moot.

Second, defendants argue that Medicaid coverage of AZT may be limited if there is a rational basis and that when that limitation is based upon the FDA's approved indications for the use of that drug, defendants cannot be legally forced to provide unlimited Medicaid coverage. Furthermore, defendants argue that if Missouri is forced to provide Medicaid coverage of AZT for individuals who do not fall within the FDA definition, then the State would be in violation of federal food and drug laws.

On July 21 and 26, 1988, plaintiffs filed their cross-motion for summary judgment and their suggestions in support of this motion, respectively. In these suggestions, plaintiffs argue that they have submitted numerous, uncontroverted affidavits establishing the medical necessity of AZT for treatment of these plaintiffs and that, under the controlling law in this Circuit, they are entitled to judgment as a matter of law, given the lack of any genuine dispute of material fact on this issue.

Also, on July 26, 1988, plaintiffs filed a motion to intervene on behalf of plaintiff Mark Momot, along with a second amended complaint that was tendered to the Clerk's Office. In this motion to intervene, plaintiff Momot stated that:

> "2. He is a member of the class of persons proposed to be certified as a plaintiff class pursuant to Rules 23(a) and 23(b)(2) in this suit. Specifically, applicant Mark Momot has been determined eligible for Medicaid, is infected with the AIDS virus, his physician has prescribed Retrovir for treatment of his AIDS infection, and defendants have denied him coverage of his Retrovir because he has never been diagnosed as having Pneumocystis carinii Pneumonia or an absolute CD4 lymphocyte count of less than 200 per cubic millimeter in the peripheral blood as required by defendants' rule, 13 C.S.R. 70–20.110.

> "3. Since defendants contend that their rule moots the claim of the named plaintiff Glenn Weaver and that plaintiff T.G. lacks standing because he did not apply through prior authorization for Medicaid coverage of his Retrovir prescription, applicant's interest in this action may not

be adequately represented by the named plaintiffs. Furthermore, disposition of this motion on the grounds of mootness or standing may, as a practical matter, impair or impede applicant's ability to secure Medicaid coverage for his Retrovir prescription."

On July 29, 1988, this Court generated a teleconference between the Court and the parties wherein the Court allowed plaintiff Momot to intervene in this action as a named plaintiff to represent the proposed class in this action.

### Plaintiffs' Motion for Class Certification

In their motion for class certification, filed on May 24, 1988, plaintiffs seek certification of a class consisting of the following individuals:

"All persons in Missouri who would have or will be determined eligible for Medicaid and who are infected with the Acquired Immune Deficiency Syndrome (AIDS) virus (Human Immuno–Deficiency Virus) and whose physicians have or will in the future prescribe the drug Retrovir for their treatment."

For the following reasons, the Court concludes that plaintiffs' proposed class satisfies the four requirements set forth in Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure and, thus, is properly certifiable as a class action.

### A.  Numerosity

Under Rule 23(a)(1), the proposed class must be so numerous that joinder is impracticable. The determination of whether a class is sufficiently large to make joinder impracticable must be made by the district court "in light of the particular circumstances of the case." *Arkansas Ed. Association v. Board of Education of Portland, Arkansas School District*, 446 F.2d 763, 765 (8th Cir.1971). No arbitrary rules regarding the necessary size of classes have been established. *Reproductive Health Services v. Webster*, 655 F.Supp. 1300, 1304 (W.D.Mo.1987).

As noted by plaintiffs, defendants, in their Response to Plaintiffs' First Set of Interrogatories, indicated that, as of January 19, 1988, there are at least 61 Medicaid recipients in Missouri who are infected with the AIDS virus and have requested Medicaid coverage for AZT. Of those individuals, four were denied coverage because they failed to meet defendants' criteria as delineated in the State rule. As of May 6, 1988, the number of claimants denied Medicaid coverage for Retrovir has increased to seven. However, as plaintiffs correctly point out, plaintiffs seek to represent not only those persons with AIDS who are currently being denied Medicaid coverage for AZT, but also those persons with AIDS who will be denied Medicaid coverage for AZT in the future. Since joinder of these unknown persons is impracticable, then the numerosity requirement is satisfied. *See Atkins v. Toan*, 595 F.Supp. 104, 105 (W.D.Mo.1984); *Ranschburg v. Toan*, 540 F.Supp. 745, 747 (W.D.Mo.1982), *aff'd* 709 F.2d 1207 (8th Cir.1983).

### B.  Commonality

To satisfy the requirements of Rule 23(a)(2), there must be a question of either fact or law common to the class. In this case, plaintiffs have raised a question of law common to all class members, that is, whether defendants' policy of denying Medicaid coverage of Retrovir to those individuals infected with the AIDS virus and who fall outside the scope of the emergency rule is violative of the federal Medicaid statute and regulations. All class members have been or will be determined eligible for Medicaid. All have been or will be infected with the AIDS virus and all have physicians who have prescribed or will in the future prescribe Retrovir for their treatment. Thus, there are questions of law and fact applicable to the class as a whole. *See Linquist v. Bowen*, 633 F.Supp. 846, 859 (W.D.Mo.1986), *aff'd* 813 F.2d 884 (8th Cir.1987).

### C.  Typicality

As noted by plaintiffs, Rule 23(a)(3) requires that the claims of the representative party be typical of the claims of the class. Typicality requires "a demonstration that

there are members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir.1977). The burden of showing typicality is not an onerous one. *See Paxton v. Union National Bank,* 688 F.2d 552, 562 (8th Cir.1982). In this case, plaintiffs have met this burden.

In support of their motion for class certification, plaintiffs submit the affidavit of two putative class members. Class member Brian Harris is an eligible Medicaid recipient who has tested positive for the AIDS viral infection. He has suffered various opportunistic infections and neurological problems, including seizures and a stroke, attributed to the AIDS infection. His physician has prescribed AZT for his treatment, but because he has not had pneumocystis or a T4 helper count below 200, he cannot get the AZT prescription filled under the Missouri Mediciad program. Mark Momot's affidavit also shows that class members share the same or similar grievance as the named representatives. Momot has been diagnosed with AIDS and has suffered from severe candidiasis, one of the indicator diseases of AIDS. His treating physician has prescribed AZT for him, but, although he is a Medicaid recipient, he has been unable to get the prescription filled under Medicaid. He has had neither pneumocystis nor a lymphocyte count below 200, and, therefore, he does not fall within the scope of defendants' rule. Thus, plaintiffs' legal claims are identical to those which would be asserted by the unnamed class members. *See Ranschburg v. Toan,* 540 F.Supp. at 748. Therefore, the Court concludes that the typicality requirement has been met in this case.

### D. *Adequacy of Representation*

Rule 23(a)(4) focuses on whether the representatives have common interests with the class members and would vigorously prosecute the interest of the class through qualified counsel. Here, there are no conflicts between the interests of the named plaintiffs and the class members they seek to represent. As shown by the affidavits of T.G. and putative class members Harris and Momot, there is a shared interest in challenging defendants' rule and obtaining Medicaid coverage for AZT. No antagonism exists between the plaintiffs and the putative class members, for the interests of the representatives and the class members they seek to represent are identical. They all suffer the same alleged harm and they all face grave risks if this cause is not presented on their behalf by the named plaintiffs.

In addition, plaintiffs are represented by counsel who can be expected to represent vigorously and adequately the interests of the class. Among the three attorneys of record for the plaintiffs, there is substantial experience in federal litigation, class-action litigation, and the complex regulations of the Social Security Act. Thus, the requirements of 23(a)(4) are satisifed.

### *Certification Under Rule 23(b)(2)*

Plaintiffs seek certification of a plaintiff class under Rule 23(b)(2) of the Federal Rules of Civil Procedure. That subsection authorizes certification of a class when the requirements of Rule 23(a) are met and:

> "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as whole." Fed.R. Civ.P. Rule 23(b)(2).

Essentially, certification under Rule 23(b)(2) requires two elements: (1) that defendants have acted on grounds generally applicable to the plaintiff class, and (2) that plaintiffs seek injunctive or declaratory relief from that action. In this case, defendants have denied Medicaid coverage of AZT to those Medicaid recipients infected with AIDS who do not fall within the limited scope of defendants' rule. In addition, plaintiffs seek appropriate declaratory and injunctive relief in order to obtain Medicaid coverage for AZT. Thus, this action is properly certifiable as a Rule 23(b)(2) class.

The definition of the class shall be that which is proposed by plaintiffs and includes:

"All persons in Missouri who have been or will be determined eligible for Medicaid and who are infected with Acquired Immune Deficiency Syndrome (AIDS) virus (Human Immuno–Deficiency Virus) and whose physicians have prescribed or will in the future prescribe the drug Retrovir ("AZT") for their treatment and who do not meet the medical criteria set forth in 13 C.S.R. 70–20.110 for Medicaid coverage of AZT."

### Parties' Cross–Motions for Summary Judgment

Both plaintiffs and defendants have filed cross-motions for summary judgment and, in essence, have stipulated that there is an absence of a dispute as to any material fact in this action. Defendants, in their motion for summary judgment, allege that since the limitation for AZT Medicare coverage provided for state rule 13 C.S.R. 70–20.110 is exactly the same as the FDA approval statement for AZT, then this Court is without any authority for ordering Medicaid coverage for plaintiffs. Additionally, defendants contend that if this Court finds that the State rule conflicts with federal Medicaid law and orders the State to provide AZT Medicaid coverage for plaintiffs, then the State would be in violation of federal food and drug laws.

Plaintiffs, on the other hand, argue that since the affidavit submitted by their experts demonstrate that AZT is medically necessary treatment and since this evidence has been uncontroverted by defendants, then the Court must enter summary judgment on plaintiffs' motion. For the following reasons, the Court concludes that summary judgment must be entered in plaintiffs' favor.

### A. Standard for Summary Judgment

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." A party moving for summary judgment must "establish the right to a judgment with such clarity that there is no room for controversy." *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). A "genuine issue" of fact exists only if a reasonable factfinder could find in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the issue is so one-sided that one party must prevail as a matter of law, summary judgment is appropriate. *Id.*, 106 S.Ct. at 2512. If "evidence is merely colorable ... or is not sufficiently probative ... summary judgment may be granted." *Id* at 2511. The initial burden is on the movant to demonstrate to the Court those portions of the factual record which show that there is a lack of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Materiality is present when the facts and evidence are used to a necessary element of the claim. *Anderson*, 106 S.Ct. at 2510.

### Medical Necessity of AZT for Plaintiffs

As noted by plaintiffs, this case is controlled by the Eighth Circuit's decision in *Pinneke v. Preisser*, 623 F.2d 546 (8th Cir. 1980). In *Pinneke*, a suit was brought by a Medicaid claimant who had undergone sex reassignment surgery. In that action, plaintiff sought injunctive and declaratory relief, alleging a denial of due process and equal protection, in addition to her statutory right to Medicaid benefits, based on the Iowa Medicaid program's failure to provide coverage for the surgery. *Id.* at 547.

The Court, in concluding that plaintiff was entitled to the relief sought in plaintiff's complaint, held:

(1) that Iowa's policy of denying Medicaid benefits for sex reassignment surgery, which was the only medical treatment available to relieve or solve the problems of a true transsexual constituted an arbitrary denial of benefits based solely on diagnosis, type of illness or condition; and

(2) that Iowa's policy of denying Medicaid benefits for sex reassignment

surgery when it was a medical necessity for treatment of transsexualism was not consistent with the objectives of the Medicaid statute. *Id.* at 549.

In so holding, the Court noted that "[t]his standard of medical necessity is not explicit in the statute, but has become judicially accepted as implicit to the legislative scheme and is apparently endorsed by the Supreme Court." *Id.* at 548, n. 2, *citing Beal v. Doe,* 432 U.S. 438, 444–45, 97 S.Ct. 2366, 2370–71, 53 L.Ed.2d 464 (1977). In addition, the Court specifically concluded that "[t]he decision of whether or not certain treatment or a particular type of surgery is 'medically necessary' rests with the *individual recipient's physician and not with clerical personnel or government officials."* 623 F.2d at 550.

■ When analyzing the facts of this case in light of the standards set forth in *Pinneke,* it becomes readily apparent that plaintiffs have presented sufficient evidence to meet their burden of showing the propriety of summary judgment in their favor.

Attached as exhibits in support of plaintiffs' motion for summary judgment are the affidavits by physicians who attest to the medical necessity of providing plaintiffs and the class with AZT Medicaid Coverage. In an affidavit by Dr. Leon Robison, a physician specializing in infectious disease at the St. Louis Regional Medical Center and St. Luke's Hospital in St. Louis, Dr. Robison states:

"4. I have reviewed the medical records of Mark Momot. I concur in the individualized diagnosis of his doctor that Mr. Momot has AIDS, based upon his oropharyngeal/esophageal candidiasis, and in the individualized determination that AZT is medically necessary for his treatment. Without AZT, Mr. Momot remains more vulnerable to opportunistic infections and he may die sooner.

5. Based upon individualized medical determinations, AZT is medically necessary and should be available for any patient with an AIDS diagnosis using the indicator diseases listed in the United States Centers for Disease Control definition of AIDS." *Declaration of Leon Robison, M.D.,* p. 2, attached to *Plaintiff's Reply Memorandum In Support of Cross–Motion for Summary Judgment.*

Plaintiffs also submit the affidavit of J. William Campbell, M.D., a physician specializing in infectious diseases, at Washington University School of Medicine in St. Louis. In this affidavit, Dr. Campbell notes that he has treated approximately 100 patients whom he had diagnosed as having AIDS or AIDS–Related Complex ("ARC") and that he has had numerous occasions to prescribe AZT. Dr. Campbell further states:

"6. In addition to my professional training and experience and my own research, I am familiar with the current literature on AIDS and its treatment. Specifically, this literature supports the conclusion that AZT is an effective treatment for Human Immunodeficiency Virus, particularly in the early stages of the disease, i.e., before the patient incurs Pneumocystis carinii pneumonia (PCP) or the patient's T4 helper/inducer lymphocyte count drops below 200.

"7. AZT is the only treatment approved for persons with AIDS or ARC. AZT, also known as Retrovir, slows the progression of AIDS and, by so doing, lengthens the life expectancy of patients and improves their quality of life by reducing opportunistic infections and other conditions. If the AIDS progresses too far, AZT may not be effective. At present, it appears that the average life expectancy for an untreated AIDS patient is usually two years. There is toxicity involved with taking AZT, in that bone marrow production is suppressed, but this risk can be managed by monitoring the patient's blood count.

"8. I have examined the medical records of T.G. I concur in the AIDS diagnosis of his physician and in the prescription of AZT for his treatment. AZT is medically necessary for this patient because he has Kaposi's sarcoma and candida esophagitis. Without AZT, which is the only available treatment for his AIDS, this patient's life will be shortened and he

may die sooner. So long as he is without an AZT regimen, he remains more vulnerable to opportunistic infections which may kill him.

"9. Aside from my own practice, based upon the professional literature, conferences, and my contacts with other physicians particularly specialists in infectious diseases, I know that AZT is generally accepted by the professional medical community, and specifically by specialists in infectious diseases as an effective and proven treatment for HIV infections, including HIV infection where there is about a history of PCP or a T4 helper/inducer lymphocyte count below 200, but where other of the AIDS-indicator diseases recognized by the Centers for Disease Control are present. While the U.S. Food and Drug Administration, in its approval of AZT as an AIDS treatment, indicated that AZT was approved for those with a history of PCP or a lymphocyte count below 200, the accumulated knowledge of the medical community is that AZT is an effective and necessary treatment for other AIDS patients who do not meet those two criteria. In the exercise of their professional medical judgment, doctors commonly prescribe AZT for patients not meeting those two criteria." *Affidavit of J. William Campbell, M.D.*, pp. 3–4.

Finally, plaintiffs also submit the affidavit of Renslow P. Sherer, M.D., a physician specializing in internal medicine with the AIDS Service of Cook County Hospital in Chicago. Dr. Sherer's affidavit essentially supports Dr. Campbell's and in it Dr. Sherer likewise concludes that AZT is medically necessary treatment for plaintiff T.G. and others in the class.

In light of these uncontroverted affidavits, plaintiffs have established that AZT is medically necessary treatment for individuals within the class in this action, even though these individuals do not fall within the limitations set forth in state rule 13 C.S.R. 70–20.110.

In countering plaintiffs' motion for summary judgment, defendants rely heavily on the affidavit of John Mills, M.D., a Professor of Medicine, Laboratory Medicine, Microbiology and Pharmacy, at the School of Medicine, University of California, San Francisco. While Dr. Mills' affidavit provides the Court with valuable insight into the risks associated with prescribing AZT for those individuals who do not fall within the requirements of state rule 13 C.S.R. 70–20.110, he does not controvert the affidavits of Dr. Robison, Dr. Campbell and Dr. Sherer in which they conclude that AZT is medically necessary treatment for this class of plaintiffs. In fact, as noted by plaintiffs, Dr. Mills' affidavit does not address the issue of medical necessity. Therefore, in light of the uncontroverted evidence establishing that the drug AZT is medically necessary treatment for individuals in plaintiffs' class who do not fit within the requirements of 13 C.S.R. 70–20.110, the Court has no choice but to sustain plaintiffs' motion for summary judgment.

Defendants argue that since the FDA has determined which individuals should be prescribed AZT, their order by this Court forcing them to provide AZT Medicaid Coverage for plaintiffs and the class would be in violation of federal food and drug laws. However, in light of the fact that states like Kansas and others have provided AZT Medicaid Coverage for all AIDS sufferers, then this contention by defendants must be rejected as meritless. *See Mair v. Barton*, No. 87–4206–R, —— F.Supp. —— (D.Kan., Nov. 17, 1987).

Accordingly, it is hereby

ORDERED that plaintiffs' motion for class certification is sustained and that this action be certified as a class action consisting of the following individuals:

"All persons in Missouri who would have or will be determined eligible for Medicaid and who are infected with the Acquired Immune Deficiency Syndrome (AIDS), virus (Human Immuno–Deficiency Virus) and whose physicians have or will in the future prescribe the drug Retrovir for their treatment and who do not meet the medical criteria set forth in 13 C.S.R. 70–20.110 for Medicaid coverage of AZT."

It is further

ORDERED that defendants' motion for summary judgment is denied, and that plaintiffs' motion for summary judgment is sustained.

It is hereby

DECLARED that defendants' denial of coverage of the drug Retrovir (AZT) is a violation of 42 C.F.R. §§ 440.230(b), 440.240(b), and 42 U.S.C. § 1983.

Finally, it is hereby

ORDERED that defendants and their officers, agents, servants, employees, attorneys and all other persons in active concert or participation with them, are enjoined from denying coverage of Retrovir to persons eligible for Medicaid and infected with the AIDS virus. It is further

ORDERED that plaintiffs have thirty (30) days from the date of this order in which to submit their motion for attorney's fees, and that defendants have fifteen (15) days therefrom in which to respond.