CENTRAL POWER & LIGHT COMPANY, Appellant,

v.

CITY OF SAN JUAN, Appellee.

No. 13–97–441–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 12, 1998.

605

Orrin Harrison, III, Samuel P. Dalton, Vinson & Elkins, Dallas, Robert L. Galligan, Jones, Galligan, Key & Lozano, Weslaco, Morris Atlas, Lisa D. Powell, Atlas & Hall, McAllen, Juan J. Hinojosa, Hinojosa & Powell, McAllen, John C. Wander, Dallas, for Appellant.

Jesus Ramirez, Gavino Morin, Montalvo & Ramirez, McAllen, Ramon Garcia, Edinburg, Adam Poncio, Cerda, Garriga & Poncio, San Antonio, Tamara L. Cochran–May, McAllen, for Appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Central Power & Light Company ("CP & L") brings this interlocutory appeal from an order entered by the 206th District Court of Hidalgo County, certifying as a class all Texas municipalities which have entered into franchise agreements with CP & L that provide for payment of franchise fees based on a percentage of CP & L's gross receipts. By five points of error, CP & L contends the trial court erred in certifying the class as a matter of law or because the court abused its discretion. We affirm.

### Factual Background

At issue in this class action is the interpretation of an allegedly similar provision contained in franchise agreements between CP & L and at least 128 Texas municipalities. The relevant portion of the disputed provision provides:

As consideration for the rights and privileges herein granted, the Grantee [CP & L] will pay to the City through the term of this franchise, a gross receipts tax equal to two percent (2%) of the gross receipts of Grantee from the sale of electricity within and for use within the corporate limits of the City[.]

Believing CP & L was underpaying franchise fees because of the company's erroneous interpretation of what constituted "gross receipts," several cities, including Pharr, Alton, Donna, and San Juan, sought to audit CP & L's records. Because the auditor was unable to obtain the full cooperation of CP & L's representatives, appellee, City of San Juan ("San Juan"),[1] filed this class action suit against CP & L, seeking a declaratory judgment, an accounting, a temporary restraining order, and a temporary injunction. San Juan's pleadings include claims for breach of contract, negligent misrepresentation, tortious interference with a contract, fraud, constructive trust, and request for declaratory

relief concerning the rights, status, and legal relationship of the parties.

After evidentiary hearings and arguments were held on February 26, 1997, May 27, 1997, June 18, 1997, June 19, 1997, and July 3, 1997, the trial court issued an order certifying a class of:

all Texas municipal corporations, municipalities, cities, towns, and villages that have or have had, existing or expired municipal fee ordinances that required Defendant [CP & L's] payment of various percentages of gross receipts received by [CP & L] from its electrical lighting and power sales consumed within the corporate limits of the municipalities, and where there has not been the execution of any prior effective release of the claims alleged in this litigation.

In addition, the trial court named San Juan the class representative and designated as class counsel "the LAW OFFICES OF RAMON GARCIA and its representative attorneys, including but not limited to, Ramon Garcia, Adam Poncio, and Tamara Cochran–May." The order also stated that pursuant to the rules of civil procedure, the trial court "may alter, amend, or withdraw this certification at any time before final judgment" and "may create additional separate classes or subclasses." See TEX.R. CIV. P. 42(c)(1), (d). The class was certified as to all claims brought by San Juan. CP & L then perfected this appeal from the certification order.

### Points of Error

By its first point of error, CP & L contends that, as a matter of law, the unnamed municipalities cannot, through inaction, delegate their authority to control franchise rights or litigation regarding those rights to San Juan, the class representative. The second and fourth points of error argue that the trial court abused its discretion because, as required by rule 42(b)(4) of the Texas Rules of Civil Procedure, common issues do not predominate over individual issues and because other superior mechanisms exist for adjudicating the dispute. By its third and

---

1. The cities of Pharr and San Benito have filed individual lawsuits regarding this matter. They are not part of these class certification proceedings.

fifth points of error, CP & L complains that the trial court did not comply with rule 42(a) because joinder of the unnamed cities is not impracticable and because San Juan is an inadequate class representative.

*Appellate Jurisdiction*

Under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966). Unless a statute specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (orig.proceeding); *Aldridge*, 400 S.W.2d at 895; *City of Mission v. Ramirez*, 865 S.W.2d 579, 581 (Tex.App.—Corpus Christi 1993, no writ). Section 51.014 of the Texas Civil Practice & Remedies Code specifically allows appeal of various interlocutory orders, including an order that "(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(3) (Vernon 1997). We conclude that we have jurisdiction to consider this interlocutory appeal.

*Scope and Standard of Review*

A party may complain of all matters which pertain to the certification decided by an interlocutory order. *American Express Travel Related Serv. Co. v. Walton*, 883 S.W.2d 703, 707 (Tex.App.—Dallas 1994, no writ) (a defendant could complain about notice to class members and class size). The certification order will be reversed only if the record shows a clear abuse of discretion. *St. Louis S.W. Ry. Co. v. Voluntary Purchasing Groups, Inc.*, 929 S.W.2d 25, 29–30 (Tex. App.—Texarkana 1996, no writ); *Walton*, 883 S.W.2d at 711.

An abuse of discretion is shown if the trial court acts without reference to any guiding principles or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985). A clear failure by a trial court to analyze or apply the law correctly is an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840

(Tex.1992); *St. Louis S.W. Ry. Co.*, 929 S.W.2d at 30. Further, the reviewing court must view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in favor of that ruling. *Health & Tennis Corp. of Am. v. Jackson*, 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.); *Vinson v. Texas Commerce Bank–Houston, Nat'l Ass'n*, 880 S.W.2d 820, 823 (Tex.App.—Dallas 1994, no writ); *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371–72 (Tex.App.—El Paso 1993, no writ).

A member of a class may sue or be sued as a representative party of the class if all the requirements of rule 42(a) are satisfied. TEX.R. CIV. P. 42(a). These requirements are:

1) the class is so numerous that joinder of all members is impractical;

2) there are questions of law or fact common to the class;

3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and

4) the representative party will fairly and adequately protect the interests of the class.

TEX.R. CIV. P. 42(a). In addition to satisfying the four criteria of rule 42(a), at least one requirement of rule 42(b) must met before a class action may be maintained. TEX.R. CIV. P. 42(b). In this case, the trial court found that rule 42(b)(4) had been satisfied. Rule 42(b)(4) provides as follows:

(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; (D)

the difficulties likely to be encountered in the management of a class action. Tex.R. Civ. P. 42(b)(4).

■ The trial court is charged with the initial task of identifying the substantive law issues and determining whether the character and nature of the class satisfies the requirements of the class action procedure. *Clements v. League of United Latin Am. Citizens (LULAC)*, 800 S.W.2d 948, 951 (Tex. App.—Corpus Christi 1990, no writ); *National Gypsum Co. v. Kirbyville Indep. Sch. Dist.*, 770 S.W.2d 621, 627 (Tex.App.—Beaumont 1989, writ dism'd w.o.j.). The trial court is not required to weigh the substantive merits of each class member's claim. *Clements*, 800 S.W.2d at 951.

■ A proponent of a class is not required to make an extensive evidentiary showing in support of the motion for certification. *Jackson*, 928 S.W.2d at 587; *Vinson*, 880 S.W.2d at 823. It is not necessary for plaintiffs to prove a prima facie case of liability to be entitled to class certification. *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 607 (Tex.App.—Texarkana 1995, writ dism'd). In determining whether a class action is appropriate, the trial court is not limited to evidence that would be admissible at trial, but may consider the pleadings and "other material" in the record. *Id.; Jackson*, 928 S.W.2d at 587; *Vinson*, 880 S.W.2d at 823; *Dresser Indus., Inc.*, 847 S.W.2d at 376; *Clements*, 800 S.W.2d at 952; *National Gypsum*, 770 S.W.2d at 627; *Life Ins. Co. of the S.W. v. Brister*, 722 S.W.2d 764, 772–73 (Tex.App.—Fort Worth 1986, no writ) (maintainability of a class action may be determined on basis of pleadings, though certification determination should be predicated on more information than petition itself).

■ So long as certification is sought and decided at an early phase of the litigation, before supporting facts have been fully developed, trial courts should favor certifying a class action. *Jackson*, 928 S.W.2d at 587; *Manning*, 914 S.W.2d at 607; *Dresser Indus., Inc.*, 847 S.W.2d at 376; *Clements*, 800 S.W.2d at 952; *Brister*, 722 S.W.2d at 774–75. This is due in part to the fact that the certification order is always subject to later modification if circumstances require it. *Manning*, 914 S.W.2d at 607. Under rule 42(c)(1), the trial court may alter, amend, or withdraw class certification at any time before final judgment, or order the naming of additional parties to insure adequate representation. Tex.R. Civ. P. 42(c)(1); *Jackson*, 928 S.W.2d at 587; *Manning*, 914 S.W.2d at 607; *Dresser Indus., Inc.*, 847 S.W.2d at 371; *Clements*, 800 S.W.2d at 951–52; *see Salvaggio v. Houston Indep. Sch. Dist.*, 709 S.W.2d 306, 309–10 (Tex.App.—Houston [14th Dist.] 1986, writ dism'd); *Brister*, 722 S.W.2d at 774–75.

### Impracticability of Joinder

By its third point of error, CP & L contends the trial court abused its discretion in certifying the class because joinder of the unnamed cities is not impracticable as required by Tex.R. Civ. P. 42(a)(1). CP & L argues that San Juan's evidence in this regard was limited to the numerosity of class members and did not address the issue of impracticability of joinder.

■ In order to certify a class, the trial court must find "the class is so numerous that joinder of all members is impracticable." Tex.R. Civ. P. 42(a)(1). This determination is not based on numbers alone. *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 653 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.); *National Gypsum*, 770 S.W.2d at 624. The test is whether joinder of all members is impracticable in view of the size of the class and such factors as judicial economy, the nature of the action, geographical locations of class members, and the likelihood that class members would be unable to prosecute individual lawsuits. *Weatherly*, 905 S.W.2d at 653; *National Gypsum*, 770 S.W.2d at 624. There is no mechanical rule for determining when class size reaches that threshold. *Employers Cas. Co. v. Texas Ass'n of Sch. Boards Workers' Comp. Self–Ins. Fund*, 886 S.W.2d 470, 474 (Tex.App.—Austin 1994, dism'd w.o.j.). Impracticable does not mean impossible. *Chevron U.S.A., Inc. v. Kennedy*, 808 S.W.2d 159, 161 (Tex.App.—El Paso 1991, writ dism'd w.o.j.). The representatives need only show

that it is extremely difficult or inconvenient to join all the members of the class. *Id.*

■ The trial court defined a class which encompasses all Texas municipal corporations, municipalities, cities, towns, and villages that have or have had municipal fee ordinances requiring CP & L to pay a percentage of the gross receipts from its electrical lighting and power sales that are consumed within the corporate limits of the municipalities. This class consists of at least 128 cities,[2] including San Juan, which are located in approximately forty-four counties in south Texas. Given that classes with far fewer members have been certified, *see id.* (twenty members); *National Gypsum,* 770 S.W.2d at 621 (sixty-six members); *see also Weaver v. Reagen,* 701 F.Supp. 717 (W.D.Mo.1988), *aff'd,* 886 F.2d 194 (8th Cir. 1989) (seven members), we conclude the numerosity element is presumptively satisfied.

The record reflects the trial court considered other factors in finding joinder impractical. San Juan's lawsuit seeks an interpretation of language allegedly contained in franchise agreements between potential class members and CP & L. Adam Poncio, counsel for San Juan, testified that attempting

> to locate, identify, [and] enjoin all the various towns and villages with whom CP & L has had prior and/or present arrangements for provision of electrical services would consume many years, let alone the time it would take to obtain the identities of all knowledgeable individuals on behalf of all such putative class entities to be joined as separate Plaintiffs in this litigation.

Charles Silver, a professor at the University of Texas School of Law, testified for San Juan as an expert on class actions. According to Silver, the smaller municipalities are not likely to bring individual lawsuits against CP & L. Professor Silver explained that the limited stakes, *i.e.,* the amount of the potential recovery, would preclude many municipalities from taking individual legal action against CP & L.

■ In addition, the trial court could have concluded that judicial economy would not be best served by attempting to deal with at least 128 individually joined municipalities, their representatives, and counsel. After reviewing the record in the light most favorable to the trial court's ruling and indulging every presumption in favor of the ruling, we hold the trial court did not abuse its discretion in finding that joinder of the unnamed municipalities was impracticable. CP & L's third point of error is overruled.

### Adequacy of the Representative

By its fourth point of error, CP & L contends the trial court abused its discretion in certifying the class because San Juan is an inadequate class representative. CP & L also contends that the elected officials of San Juan "are in the dark about this action" and that San Juan's interests potentially conflict with those of other cities.

■ A class representative must fairly and adequately represent the interest of the class. TEX.R. CIV. P. 42(a); *Weatherly,* 905 S.W.2d at 651; *Dresser Indus., Inc.,* 847 S.W.2d at 373. The adequacy of representation is a fact question to be determined by the trial court based on the circumstances of each case. *Manning,* 914 S.W.2d at 614; *Dresser Indus., Inc.,* 847 S.W.2d at 373. In determining whether a representative is adequate to protect the interests of the class, the trial court must consider the zeal and competence of class counsel and "the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 844 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Adams v. Reagan,* 791 S.W.2d 284, 291 (Tex.App.—Fort Worth 1990, no writ).

■ The representative must demonstrate that, through its attorney, it will vigorously prosecute the class claims and assure the court that there is no antagonism between the representative and the class members. *Jackson,* 928 S.W.2d at 589; *see also*

---

2. One document in the record reflects that as of January 1, 1991, there were over 200 Texas municipalities served by CP & L. Whether all these cities had franchise agreements with CP & L is not apparent from the record.

*Weatherly,* 905 S.W.2d at 651; *Dresser Indus., Inc.,* 847 S.W.2d at 373; *Wiggins v. Enserch Exploration, Inc.,* 743 S.W.2d 332, 334–35 (Tex.App.—Dallas 1987, writ dism'd w.o.j.). Class counsel must be sufficiently qualified and experienced to prosecute the action vigorously. *Manning,* 914 S.W.2d at 614; *Employers Cas. Co.,* 886 S.W.2d at 474.

■ San Juan's city manager, Jorge Arcaute, testified that the City of San Juan was willing to commit to the litigation and to being the class representative. According to Arcaute, the issue in the litigation is whether franchise fees were correctly calculated by CP & L. Arcaute believed other cities had similar claims against CP & L. Although Arcaute had only a vague understanding of class actions and the responsibilities of the class representative, San Juan city attorney, Jesus Ramirez, demonstrated his knowledge of class actions and of the city's claims. Ramirez's testimony also reflects that he is the city official most familiar with the franchise agreement at issue and that he acts as an agent of the city.

■ Other than information about similar lawsuits filed by Pharr and San Benito and assertions that if it loses, CP & L will be able to pass on to ratepayers its liability for franchise fee underpayments, if any, no evidence was presented concerning any potential conflict between San Juan and the class members. That similar lawsuits have been filed is not a *per se* indication of animosity. Nor is CP & L's interpretation of its ability to "pass through" costs to ratepayers. Each municipality, including Pharr and San Benito, has the option of opting out of the class and taking whatever action it deems appropriate. Moreover, the class may be decertified at any time before the final judgment. Finally, we note that CP & L has voiced no complaint concerning the adequacy of class counsel. The qualifications and experience of the class counsel is of greater consequence than the knowledge of the class representatives. *See Manning,* 914 S.W.2d at 614.

At this early stage of litigation, we hold the trial court did not abuse its discretion in finding San Juan to be an adequate class representative. We overrule CP & L's fourth point of error.

*Predominance*

By its fifth point of error, CP & L contends the trial court abused its discretion in certifying the class because common issues do not predominate over individual issues. CP & L also contends that damages will have to be determined individually for each municipality. In addition, CP & L argues that it has numerous affirmative defenses that can be raised against some but not all of the cities.

■ The test for evaluating predominance is "not whether the common issues outnumber the individual issues, but instead whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Manning,* 914 S.W.2d at 611; *Dresser Indus.,* 847 S.W.2d at 374; *Brister,* 722 S.W.2d at 772. In deciding whether common issues predominate, the trial court need only identify substantive law issues that will control the litigation. *Jackson,* 928 S.W.2d at 590; *Dresser Indus.,* 847 S.W.2d at 375; *see also Brister,* 722 S.W.2d at 775. Even in cases where it is not conclusively established that common issues predominate, the most efficient approach is for the trial court to certify the class, and if necessary after the case is developed, to dissolve the class or certify subclasses if common questions will not predominate at trial. *Jackson,* 928 S.W.2d at 590; *Dresser Indus.,* 847 S.W.2d at 375; *see also Brister,* 722 S.W.2d at 775 (court should certify class, subject to later motion to dissolve, if common issues may predominate).

■ Moreover, class certification will not be prevented merely because damages must be determined separately for each member of the class. *Angeles/Quinoco Sec. Corp. v. Collison,* 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Adams,* 791 S.W.2d at 289. Nor will the presence of even an arguable defense peculiar to different members destroy the entire class. *Angeles/Quinoco,* 841 S.W.2d at 516; *Adams,* 791 S.W.2d at 289.

■ The overriding issues in this case are the legal interpretation of CP & L's

obligations under the franchise agreements and the appropriateness of CP & L's accounting practices. Roger W. Murphree, a CP & L representative, testified that the language in the franchise fee agreements was generally the same for all municipalities. He also testified that an interpretation of the agreement would apply to all of the cities and that accounting procedures used by CP & L in calculating franchise fees were generally applicable to all cities.

Because it appears at this stage of the proceedings that common issues may predominate, we hold the trial court did not abuse its discretion in making such a finding. We overrule CP & L's fifth point of error.

*Superiority*

By its second point of error, CP & L contends the trial court abused its discretion in certifying the class because other superior mechanisms exist for adjudicating the dispute. CP & L argues that joinder, individual lawsuits, or a proceeding before the Public Utilities Commission ("PUC") are more favorable alternatives to a class action.

■ In determining whether a class action is superior to other available methods, the trial court must consider the alternative procedures for disposing of the dispute and compare those to the judicial resources and potential prejudice to absent class members. *Reserve Life Ins.,* 917 S.W.2d at 845; *Brister,* 722 S.W.2d at 772. The alternatives to class action involve individual adjudication and the availability and practicality of joinder and intervention. *Reserve Life Ins.,* 917 S.W.2d at 845; *Brister,* 722 S.W.2d at 772.

■ A class action is superior to other methods of adjudication where any difficulties which might arise in the management of the class are outweighed by the benefits of classwide resolution of common issues. *Weatherly,* 905 S.W.2d at 655; *Dresser,* 847 S.W.2d at 375; *National Gypsum,* 770 S.W.2d at 626. In assessing whether a class action is superior, the court may consider whether: (1) class members have an interest

in resolving the common issues by class action, (2) class members will benefit from discovery already commenced, and (3) the court has invested time and effort in familiarizing itself with the issues in dispute. *Weatherly,* 905 S.W.2d at 655; *Dresser,* 847 S.W.2d at 375; *National Gypsum,* 770 S.W.2d at 626.

We have already found in our discussion under point three that the record reflects joinder of the municipalities is impractical and individual lawsuits are likely to be precluded for smaller municipalities. Thus, we will consider only CP & L's contention that a proceeding before the PUC is superior to the class action mechanism.

CP & L argues that a proceeding before the PUC is superior because the PUC continuously supervises and approves CP & L's semi-annual franchise factor filings. When CP & L requests approval of the franchise factor filings, the cities are represented before the PUC by the CP & L Cities Steering Committee ("Steering Committee"). CP & L contends that the Steering Committee could also represent the cities before the PUC in expressing their concerns about the interpretation of the franchise agreements and the underpayment of franchise fees.

The record reflects that CP & L asked the PUC to assert its jurisdiction over this matter. However, on April 3, 1997, the PUC determined that it did not have authority to determine or modify franchise fees charged by a municipality and refused to consider CP & L's request.[3] In addition, Jim Darling, city attorney for McAllen and a member of the Steering Committee, testified that neither the PUC nor the Steering Committee had ever audited the franchise fees paid to the cities. He explained that the Steering Committee is not an ongoing body, but exists "docket by docket" when CP & L's proposed rate increases are considered by the PUC.

■ The record shows that the municipalities have an interest in resolving the common issues by class action because a legal interpretation of the similar franchise agree-

---

3. An appeal of this decision is pending in the 201st District Court of Travis County in Cause No. 97–07100.

ments would be applied to all class members. The record further reflects that the trial court has invested time and effort in familiarizing itself with the issues in dispute during at least five hearings. For these reasons, we hold the trial court did not abuse its discretion in finding that a class action was the superior method for resolving the dispute. We overrule CP & L's second point of error.

### Delegation of Authority

By its first point of error, CP & L complains that, as a matter of law, the trial court erred in certifying the class because the cities cannot delegate individual responsibility for performing governmental functions to San Juan through inaction. CP & L argues the municipalities need take no action to become class participants because the trial court certified an opt-out class that requires the municipalities to notify the court only if they decide not to participate in the class action. By passively becoming participants, CP & L contends the municipalities illegally delegate control of governmental functions, in this case interpretation of franchise rights and the decision to litigate over those rights, to San Juan.

That no notification is required for the municipalities to participate does not, however, mean the cities are free of the need to comply with statutes, charters, and ordinances governing their authority. A municipality is commonly defined as an organized body, consisting of inhabitants of a designated area, which is a legal entity constituting a subdivision of the State having delegated powers. *City of Euless v. Dallas/Fort Worth Int'l Airport Bd.*, 936 S.W.2d 699, 704 (Tex. App.—Dallas 1996, no writ); *see, e.g., Welch v. State*, 148 S.W.2d 876, 879 (Tex.Civ.App.—Dallas 1941, writ ref'd); *see also Vela v. City of McAllen*, 894 S.W.2d 836, 839 (Tex.App.—Corpus Christi 1995, no writ). The only way that a political subdivision of the state can act is by and through its governing body. *City of Coppell v. General Homes Corp.*, 763 S.W.2d 448, 456 (Tex.App.—Dallas 1988, writ denied); *Cook v. City of Addison*, 656 S.W.2d 650, 657 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). It is fundamental that a municipal corporation possesses no power that is not conferred by its charter or by the general laws under which it was formed. *Southwestern Bell Tel. Co. v. City of Kountze*, 543 S.W.2d 871, 876 (Tex.Civ.App.—Beaumont 1976, no writ).

When a charter is adopted, that instrument becomes the fundamental law of the municipality in the same manner that the constitution is the fundamental law of the state. *Sierra Club v. Austin Indep. Sch. Dist.*, 489 S.W.2d 325, 332 (Tex.Civ.App.—Austin 1972), *rev'd on other grounds*, 495 S.W.2d 878 (Tex.1973); *see Willman v. City of Corsicana*, 213 S.W.2d 155, 157 (Tex.Civ. App.—Waco 1948), *aff'd*, 147 Tex. 377, 216 S.W.2d 175 (1949). The only limitation upon these powers is that the charter may not be in conflict with general laws of the state or in contravention of the constitution. *Forwood v. City of Taylor*, 147 Tex. 161, 214 S.W.2d 282, 286 (1948); *Sierra Club*, 489 S.W.2d at 332–33; *City of El Paso v. Town of Ascarate*, 209 S.W.2d 989, 994 (Tex.Civ.App.—El Paso 1947, writ ref'd); *City of Fort Worth v. Morrison*, 164 S.W.2d 771, 772 (Tex.Civ.App.—Fort Worth 1942, writ ref'd); *Yellow Cab Transit Co. v. Tuck*, 115 S.W.2d 455, 457 (Tex.Civ.App.—Dallas 1938, writ ref'd). The municipality can exercise only such powers as are expressly granted by the charter, or those which may be reasonably implied from the powers granted, or those that are incidental to the purpose for which the corporation was created. *Anderson v. City of San Antonio*, 123 Tex. 163, 67 S.W.2d 1036, 1037 (1934); *Davis v. City of Taylor*, 123 Tex. 39, 67 S.W.2d 1033, 1034 (1934); *Foster v. City of Waco*, 113 Tex. 352, 255 S.W. 1104, 1105 (1923); *Willman*, 213 S.W.2d at 157.

While broad discretion in many instances is permitted the municipal governing body in the exercise of its powers and authority, it must respect the express provisions of the charter in instances where they are applicable. *See City of Austin v. Thompson*, 147 Tex. 639, 219 S.W.2d 57, 59 (1949). It is a well-settled rule that the governing authorities of cities can express themselves and bind the cities only by acting together in a meeting duly assembled. *City of Corpus Christi v. Bayfront Assoc., Ltd.*, 814 S.W.2d 98, 105 (Tex.App.—Corpus Christi 1991, writ

denied); *Stirman v. City of Tyler*, 443 S.W.2d 354, 358 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.). A city council can transact a city's business transactions only by resolution or ordinance, by majority rule of the council. *Bayfront Assoc.*, 814 S.W.2d at 105; *Stirman*, 443 S.W.2d at 358; *First Nat'l Bank of Marlin v. Dupuy*, 133 S.W.2d 238, 240 (Tex.Civ.App.—Waco 1939, writ dism'd, judg. cor.). A city's governing body may not delegate the right to make decisions affecting the transaction of city business. *City of Coppell*, 763 S.W.2d at 456; *Stirman*, 443 S.W.2d at 358; *City of Floydada v. Gilliam*, 111 S.W.2d 761, 764 (Tex.Civ.App.—Amarillo 1937, no writ); *see City of San Antonio v. Micklejohn*, 89 Tex. 79, 33 S.W. 735, 736 (1895). The governing body is authorized to delegate to others the right to perform acts and duties necessary to the transaction of the city's business, but can do so only by resolution or ordinance, by a majority vote. *Stirman*, 443 S.W.2d at 358; *Gilliam*, 111 S.W.2d at 764.

■■■ We conclude that a properly worded class certification notice[4] sent to all governing authorities for each municipality, including all mayors, councilpersons, commissioners, city managers, and city attorneys, will insure the appropriate actions are taken in determining whether to participate in this litigation. Each municipality receiving notice of the class certification will have to review the relevant franchise agreements in order to determine if they fall within the defined class. Each potential class member should know from its charter, and other pertinent laws, what actions are necessary for the city to stay in or opt-out of this particular litigation. The class certification notice does not relieve the municipalities of this obligation. If a city through its authorized officials opts-out of the class, then the procedures prescribed by the class certification notice must also be satisfied. The class certification notice should allow ample time for opt-out responses in order that the municipalities may comply with their charters and other laws.

We hold the trial court did not err as a matter of law by certifying the class. We overrule CP & L's first point of error.

4. We offer no opinion on the propriety of the

We affirm the trial court's class certification order.

notices included in the record or briefs.