In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-147 CV


____________________



RENT-A-CENTER, INC., Appellant



V.



CAREY HAWA DURON, ET AL., Appellees






On Appeal from the 58th Judicial District Court


Jefferson County, Texas


Trial Court Cause No. A-171,008






MEMORANDUM OPINION


 Carey Hawa Duron sued Rent-A-Center, Inc. for alleged violations of sections 35.71-35.74 of the Texas Business & Commerce Code. Duron sued on behalf of herself and a class
of others similarly situated. The trial court entered an order granting Duron's motion for
class certification under Rule 42(b)(4) of the Texas Rules of Civil Procedure. (1) RAC filed
this interlocutory appeal pursuant to Tex. Civ. Prac & Rem. Code Ann. § 51.014(a)(3)
(Vernon Supp. 2004).

 RAC operates rent-to-own stores throughout the country. RAC's customers enter into
rental-purchase agreements, under which they rent household items by making weekly, semi-monthly, or monthly rental payments in advance. At the end of each rental term, the
customer may either decide to continue renting the items, or may return them to RAC. The
customer also has a purchase option.

 Duron rented a big-screen television at RAC's store in Beaumont, and she was to
make weekly rental payments of $36.99 plus tax. Duron's agreement stated that any late fees
would be the lesser of 7% of the missed payment or $5.00. RAC says the 7% figure was a
printing error, and RAC never charged its Texas customers late fees of more than 5%. Duron
missed two weekly payments. She then paid for the two missed weeks, plus the next week's
rental fee and a late fee of $2.38. Duron missed another payment. She paid four days of
delinquent rental and returned the television. Duron then filed suit against RAC, alleging
that RAC's calculation of late charges violates Sections 35.72 - 35.74 of the Texas Business
and Commerce Code. (2) Duron sought recovery of actual damages and the statutory penalty
imposed by section 35.74. 

 RAC audited the store computer system used to calculate late fees in Texas. RAC
says it discovered the system calculated the late fee based upon a "daily rental rate" rather
than on the rental term (weekly, semi-monthly, or monthly) set forth in its rental agreements. 
Texas is the only state in which RAC used a "daily rental rate" for calculating late fees. 
Because RAC determined its use of a "daily rental rate" rather than a late fee based upon the
rental term may result in late charges in excess of the amount permitted by Section
35.72(c)(5) of the Texas Business and Commerce Code, RAC mailed notices to 29,500
potentially affected customers, and then issued refunds to the 23,500 customers whose notice
letters were not returned by the post office as undeliverable.

 RAC raises several issues for our consideration: whether the trial court erred in
certifying a class because individual issues predominate over common issues; whether the
trial court failed to establish a trial plan to insure that RAC's individual defensive issues
could be fairly and efficiently determined in a class action; and, because RAC has taken
remedial steps as to putative class members except Duron, whether Duron is typical of any
class of RAC customers, and whether there is a class of persons so numerous as to warrant
class treatment.

 Before ruling on class certification, a trial court must perform a rigorous analysis to
determine whether all prerequisites to certification have been met. See Southwestern Ref.
Co., Inc. v. Bernal, 22 S.W.3d 425, 435 (Tex. 2000). It is improper for a court to certify a
class without knowing, and indicating in the certification order, how the claims can and will
likely be tried. Id. To adequately analyze the propriety of class certification, "going beyond
the pleadings is necessary, as a court must understand the claims, defenses, relevant facts,
and applicable substantive law in order to make a meaningful determination of the
certification issues." Id. (quoting Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th
Cir. 1996)). The class action procedure is not meant to alter the burden of proof, the right
to jury trial, or any substantive prerequisites to recovery; rather, a class action is merely a
procedural device designed to advance judicial economy. Id. at 437; see also Tex. R. Civ.
P. 815. The procedure cannot be used in a way that deprives a party of a fair and impartial
trial. Bernal, 22 S.W.3d at 437. "[B]asic to the right to a fair trial -- indeed, basic to the very
essence of the adversarial process -- is that each party have the opportunity to adequately and
vigorously present any material claims and defenses." Id. 

 Under Rule 42(b)(4), the court must find that questions of law or fact common to the
members of the class predominate over any questions affecting only individual members.

In determining whether common issues predominate, the court must identify the substantive
issues that will control the outcome of the litigation, assess which issues will predominate,
and determine if the predominating issues are those which are common to the class. Bernal,
22 S.W.3d at 434. The test for predominance is not whether common issues outnumber
individual issues, but "whether common or individual issues will be the object of most of the
efforts of the litigants and the court." Id. (quoting Central Power & Light Co. v. City of San
Juan, 962 S.W.2d 602, 610 (Tex. App.--Corpus Christi 1998, writ dism'd w.o.j.)). "Ideally,
'a judgment in favor of the class members should decisively settle the entire controversy, and
all that should remain is for other members of the class to file proof of their claim.'" Id.
(quoting Life Ins. Co. of the Southwest v. Brister, 722 S.W.2d 764, 772 (Tex. App.--Fort
Worth 1986, no writ)). The purpose of the predominance requirement is to prevent class
action litigation when "the sheer complexity and diversity of the individual issues would
overwhelm or confuse a jury or severely compromise a party's ability to present viable
claims or defenses." Capital One Bank v. Rollins, 106 S.W.3d 286, 294 (Tex. App.--Houston
[1st Dist.] 2003, no pet.). "If, after common issues are resolved, presenting and resolving
individual issues is likely to be an overwhelming or unmanageable task for a single jury, then
common issues do not predominate." Bernal, 22 S.W.3d at 434. 

 The trial court in this case certified a class as follows:

 All persons who 1) entered into a rental-purchase agreement with RAC within the
State of Texas, and 2) were charged and paid a "late fee" or "reinstatement fee" by
RAC in an amount in excess of $2.00 and in excess of five percent of any delinquent
payment, 3) during the four years prior to the date of filing of this lawsuit through the
date of class certification and whose records have been maintained by RAC.


The trial court's certification order states "the Court has not found a single significant
individual issue presented in this case . . . . " However, the order then continues:

 [T]he precise amount of each class member's actual damages and
statutory penalty is admittedly individual. . . . [T]he actual damages, as well
as the statutory penalty amount, for each of the class members can be
ministerially calculated from RAC's own electronic records. . . . Plaintiff can
submit to the jury an individual damage award for each class member prepared
in a ministerial fashion from RAC's own records. 

 

 . . . [T]his Court finds that this is a straightforward contract/statutory
violation case that can manageably be tried on a class-wide basis before a
single jury. The core determination for the proposed class is whether RAC's
late fee calculation method violated the statute. This is likely an issue that can
be resolved by the Court as a matter of law prior to trial, or at a minimum is a
simple and single issue to present to the jury. Similarly, the effect of RAC's
"remediation steps" and any effect they may have had on the class members'
entitlement to the statutory penalties, will also be either resolvable by the
Court as a matter of law or presentable to the jury as a simple single issue at
trial. As discussed above the Plaintiff will be able to submit a ministerially
determined damage claim based on RAC's own records. As this claim will be
based on RAC's own records, it appears likely that no fact issue will be
presented as to the appropriate calculations of these damages, allowing the
Court to rule on the issue. If necessary, however, this damage issue may be
submitted to the jury through a predicated aggregate award in combination
with a conditional individual matrix question. Plaintiff may submit evidence
to the jury of the individual damage amount as determined from RAC's
records, along with an aggregate amount of the damages for the class as a
whole. The first jury question will ask whether the total aggregate amount
claimed by the class should be awarded. If the answer is yes, the jury's duty
is over. If the answer is no, the jury will be asked to answer the second
question which will ask for an individual damage award for each class
member. . . .[T]he only dispute will be whether the method of calculation and
attempted "remediation steps" were proper at all. In that instance, the Court
will be able to resolve the case on summary judgment motions.


 The required damage and penalty calculation cannot be both "ministerial" and an issue
for the jury. It is the province of the jury to decide disputed issues of fact. A ministerial
calculation would assume the facts are determined and undisputed. That the trial court
contemplates deciding as a matter of law whether RAC's conduct violated the statute does
not mean common issues necessarily predominate over individual issues. These are
individual damage claims. The damage-finding procedure described by the certification
order -- submitting an "aggregate" damage award to the jury, and then if the answer is "no",
"the jury will be asked to answer a second question which will ask for an individual damage
award for each class member" -- clearly anticipates that the jury will be required to make
thousands of individual damage determinations. Under the trial plan, the jury must first
determine the individual amounts in order to decide if the suggested "aggregate award" is
accurate. We do not believe a court's suggestion of a damage award to a jury would be
proper under any circumstance. Here, the trial court's suggested award would lead the jury
to an aggregate award that would be of no help to the court, since these are individual claims
for damages, not a joint damage claim. Whether the jury answered "yes" or "no" to the
aggregate award question, the jury would be obligated to separately consider and determine
thousands of individual damage claims. 

 The certification order is silent as to what evidence other than RAC's records the jury
will be permitted to consider in determining the amount of each individual's damages, and
the accuracy of RAC's records may be in dispute. RAC's records were used by RAC to
calculate its remediation steps. If RAC's records accurately reflect the required remediation
payments, it is unclear why those individuals who have received payments from RAC based
on its records are to be members of the class, unless the determination as to whether each
class member has been compensated appropriately requires individualized inquiry. 

 The trial plan anticipates the need to ask the jury for individual damage findings. 
Individual damage issues "will be the object of most of the efforts of the litigants and the
court." See Bernal, 22 S.W.3d at 434 (quoting Central Power & Light Co., 962 S.W.2d at
610). On this record, the class as defined and delineated through the trial plan may not be
certified under Rule 42b(4). Appellant's issues one and two are sustained. We need not
address issue three. The trial court's class certification order is reversed, and this cause is
remanded to the trial court for further proceedings consistent with this opinion. 

 REVERSED AND REMANDED.

 PER CURIAM

Submitted on September 23, 2004

Opinion Delivered October 28, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ. 
1. Former Rule 42(b)(4) of the Texas Rules of Civil Procedure is now Rule 42(b)(3)
pursuant to amendment, effective January 1, 2004. See Tex. R. Civ. P. 42(b)(3) (Vernon
Supp. 2004). 
2. Section 35.72(c) states, in pertinent part:

 (c) A rental-purchase agreement may not contain a provision: 

 . . .

 (5) requiring the payment of a late charge or reinstatement fee unless a
periodic payment is delinquent for more than seven days and the
charge or fee is in an amount equal to not more than the lesser of five
percent of the delinquent payment or $5, and not less than $2.

 Tex. Bus. & Comm. Code § 35.72 (Vernon 2002).