

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00214-CV

———————————————

KENT FLYNN, D/B/A FLYNN & COMPANY AND D/B/A SFC SERVICES,
Appellant

V.

HALTOM CITY ECONOMIC DEVELOPMENT CORPORATION, Appellee

---

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-276438-15

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

In two issues in this breach-of-contract case, Appellant Kent Flynn, d/b/a Flynn & Company and d/b/a SFC Services, (Flynn) complains about the granting of Appellee Haltom City Economic Development Corporation's (HCEDC)[1] plea to the jurisdiction and traditional and no-evidence summary judgment motion. With regard to the first issue, we will conclude that the trial court did not hear or rule upon the plea to the jurisdiction, and therefore, there is nothing for us to review. With regard to the second issue, we will conclude that Flynn presented no evidence of either valid contracts or damages resulting from the alleged breach of the contracts. Therefore, we will affirm the order granting summary judgment.

### II. BACKGROUND

**A. Flynn and HCEDC enter into two agreements that were later terminated; Flynn sues; and HCEDC answers and asserts numerous defenses.**

As alleged in Flynn's live pleading, on May 14, 2004, Flynn and HCEDC entered into two agreements: (1) a Project Management Agreement (PMA) "appointing Flynn as the Project Manager under which [he] would assist in obtaining and managing high quality development projects for the Haltom City community"

---

[1]HCEDC is a Type B economic development corporation. *See Haltom City Econ. Dev. Corp. v. Flynn*, No. 02-18-00145-CV, 2019 WL 1284906, at *1 (Tex. App.—Fort Worth Mar. 21, 2019, no pet.) (mem. op.); *see also* Tex. Loc. Gov't Code Ann. §§ 501.001–.453, 505.001–.355.

and (2) a Professional Services Agreement (PSA) with Flynn "as the professional for consulting and management services related to various projects the HCEDC desired to pursue for the Haltom City community" (collectively the Agreements). Flynn's compensation varied by the type of service rendered, ranging from a yearly salary for some of the services to a flat fee, percentage of asset value, or hourly rate for other services.

Both of the Agreements had a two-year term beginning May 14, 2004, and both stated that thereafter, they would renew "for successive one (1) year terms upon approval of the HCEDC." According to Flynn's pleadings, the two Agreements were "renewed according to their terms" over the years, and Flynn continued providing consulting services on a month-to-month basis.

Flynn's pleadings state that the contracts were terminated on January 19, 2011. After termination, HCEDC "did pay for some of the projects [he] worked on, but he was never paid on others." Flynn filed this lawsuit, which was originally filed on January 19, 2015, against HCEDC asserting breach of the Agreements.

HCEDC answered and asserted numerous defenses, including an initial plea to the jurisdiction alleging governmental immunity (the first plea to the jurisdiction) and various affirmative defenses, including the statute of limitations.[2]

---

[2]In an earlier appeal, HCEDC appealed the denial of its first plea to the jurisdiction, claiming that it was immune from suit. *Haltom City Econ. Dev. Corp.*, 2019 WL 1284906, at *1. We affirmed the trial court's order, holding that HCEDC "does not independently possess governmental immunity." *Id.* at *2; *see Rosenberg Dev.*

3

**B. HCEDC files its combined plea to the jurisdiction and traditional and no-evidence summary judgment motion; Flynn responds; the trial court grants the traditional and no-evidence summary judgment motion; and Flynn appeals.**

In 2024, HCEDC filed its "Defendant's Plea to the Jurisdiction and First Amended Traditional and No Evidence Motion for Summary Judgment." In the plea to the jurisdiction (the second plea to the jurisdiction), HCEDC asserted that the trial court had no jurisdiction over Flynn's breach-of-contract claims because they were barred by the statute of limitations. As to its traditional motion for summary judgment, HCEDC argued that (1) Flynn could not recover damages because HCEDC was immune from liability, (2) the Agreements were not valid agreements, (3) the PSA was void because it violated public policy, (4) the PSA was void and unenforceable because it called for Flynn to undertake an illegal act, (5) there was no breach of the PMA, and (6) the PSA did not entitle Flynn to certain payments he requested. As to its no-evidence motion, HCEDC challenged all elements of Flynn's breach-of-contract claims, including that there was a valid contract, performance or tendered performance by Flynn, breach of the contract by HCEDC, and resulting damages to Flynn. Specifically, it argued, among other things, that Flynn had no evidence that HCEDC and the City Council of the City of Haltom City, Texas (the City Council) had approved and authorized the Agreements and any renewals.

---

*Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 741 (Tex. 2019) (holding that "economic development corporations are not governmental entities in their own right and therefore are not entitled to governmental immunity").

4

Flynn responded to the motion, attaching as evidence his affidavit and portions of his deposition. There is no reporter's record from the hearing. However, the trial court signed an order stating that it had considered and granted "Defendant's First Amended Traditional and No Evidence Motion for Summary Judgment." Flynn appealed from that order.

### III. DISCUSSION

In two issues, Flynn argues that the trial court erred in granting HCEDC's (1) second plea to the jurisdiction and (2) motion for summary judgment.[3] In

---

[3]In its brief, HCEDC states that Flynn has failed to adequately brief his issues because "at no point does Flynn cite to the record in support of [his] arguments" and instead "provides unsupported, conclusory statements for his claims." Indeed, Flynn's "Statement of Facts" encompasses ten pages and contains no record references. His entire forty-four-page brief contains only three record references— one to "C.R. p. 6," one to "C.R. p. ___" with no page inserted, and one to "CR: 1504," even though the clerk's record consists of five volumes and 1,977 pages. While Flynn attached an appendix to his brief, which he generally references, this is not the appellate record. *See* Tex. R. App. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."); *see also* Tex. R. App. P. 38.1(k) (appendix in civil cases).

This court has recently set forth the law regarding adequately briefing an issue:

An appellant bears the burden of filing a brief that "enable[s] the court to decide the case" by summarizing the pertinent facts with "support[ive] . . . record references" and by presenting "a clear and concise argument for the contentions made, with appropriate citations . . . to the record." Tex. R. App. P. 38.1(g), (i), 38.9.

. . . .

Because [Appellant] failed to adequately brief her issues, we could affirm the trial court's judgment on that basis alone. *See Perkins* [*v. Hicks*,

5

response, HCEDC rephrases the issues as whether the trial court correctly dismissed Flynn's breach-of-contract claims because (1) they were barred by the applicable four-year statute of limitations, (2) the Agreements were void *ab initio*, (3) the Agreements were void as against public policy, (4) Flynn failed to provide any evidence of a valid contract, (5) Flynn failed to provide any evidence that his alleged performance was authorized by the Agreements or that HCEDC breached its obligations under the Agreements, (6) Flynn failed to proffer evidence of damages, (7) the Agreements were made in violation of a state statute and were therefore illegal, (8) HCEDC did not breach the Agreements, (9) the summary judgment record does not contain any competent evidence as to damages, and (10) HCEDC is immune from liability.

---

No. 02-19-00207-CV], 2020 WL 7393334, at *1 [Tex. App.—Fort Worth Dec. 17, 2020, no pet.) (per curiam) (mem. op.)] (holding appellant's inadequate briefing failed to preserve any error for review). Nonetheless, the Texas Supreme Court has encouraged us to "reach the merits of an appeal whenever reasonably possible," so we attempt to do so. *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213–14 (Tex. 2020); *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162–63 (Tex. 2012).

*Sparks v. Southwire Co., LLC*, No. 02-24-00120-CV, 2024 WL 4778353, at *2 n.4 (Tex. App.—Fort Worth Nov. 14, 2024, no pet.) (mem. op.); *see Schlafly v. Schlafly*, 33 S.W.3d 863, 873 n.8 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("We note that [Appellant's] appellate brief does not contain any references to the record in its 'Statement of Facts,' and that his argument under this issue makes only one reference to the record. This briefing is in clear violation of Texas Rule of Appellate Procedure 38.1(f)."). We will also attempt to reach the merits here.

**A. We set out the applicable summary judgment law and standard of review.**

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which no evidence exists. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine fact issue supporting each element contested in the motion. *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

We review de novo a trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When, as here, a party moves for both traditional and no-evidence summary judgment, and our determination of the no-evidence summary judgment could make the grounds asserted in the traditional motion moot, we first review the trial court's ruling under the no-evidence standard of review. *Ford Motor Co.*, 135 S.W.3d at 600.

If the trial court properly granted the no-evidence motion, we need not consider the arguments raised in the traditional motion for summary judgment. *Id.*

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc.*, 286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

## B. We set out applicable laws regarding economic development corporations.

As a Type B economic development corporation, *see Haltom City Econ. Dev. Corp.*, 2019 WL 1284906, at *1, HCEDC was created under the Development Corporation Act (the Act), which governs the creation and activities of economic development corporations.[4] *See* Tex. Loc. Gov't Code Ann. §§ 501.001–.453, 505.001–.355. The Act authorizes a governmental entity (referred to as the

---

[4]According to the summary judgment evidence, the City Council terminated HCEDC on January 14, 2019. *See* Tex. Loc. Gov't Code Ann. § 501.401. The "Certificate of Termination" was filed with the Secretary of State on August 4, 2021.

"authorizing unit") to create an economic development corporation to, among other things, undertake projects designed to spur economic growth, reduce unemployment, and improve infrastructure. *Id.* §§ 501.004, .054(b)(2); *see Sai Monahans Brother Hosp., LLC v. Monahans Econ. Dev. Corp.*, 657 S.W.3d 438, 447 (Tex. App.—El Paso 2022, no pet.).

In creating an economic development corporation, an authorizing unit must abide by the requirements set out by the legislature. *Sai Monahans Brother Hosp., LLC*, 657 S.W.3d at 447. The corporation's authorizing unit "will approve all programs and expenditures of a corporation." Tex. Loc. Gov't Code Ann. § 501.073(a). Economic development corporations "may exercise all powers necessary or appropriate to effect a purpose for which the corporation is organized, *subject to the control of the governing body of the corporation's authorizing unit.*" *Id.* § 501.054(b)(2) (emphasis added).

## C. We apply the law to the facts.

### 1. With regard to the first issue, the trial court never heard or ruled on the second plea to the jurisdiction.

In his first issue, Flynn argues that the trial court erred in granting the second plea to the jurisdiction, which he states in his brief is based on the statute of limitations. While recognizing that the trial court only expressly granted the amended traditional and no-evidence motion for summary judgment, Flynn adds that he "assume[s] that the trial court intended to also grant the Plea to the Jurisdiction."

9

However, the record does not reflect that the trial court either heard or ruled upon the part of HCEDC's motion related to the second plea to the jurisdiction.

Moreover, HCEDC only raised the statute-of-limitations defense in the second plea to the jurisdiction and not in its summary judgment motion. Because the trial court did not rule on the second plea to the jurisdiction, there is nothing before us to review on appeal. *See* Tex. R. App. P. 33.1; *see also Johnson v. Bastrop Cent. Appraisal Dist.*, No. 03-23-00354-CV, 2024 WL 3073766, at *4 (Tex. App.—Austin June 21, 2024, no pet.) (mem. op.) (stating that because the plea to the jurisdiction was moot as a result of the dismissal of the case for the appellant's failure to furnish security, "no ruling by the trial court on [the appellant's] plea to the jurisdiction is before us to review on appeal"); *see also Waller Cnty. v. City of Hempstead*, 453 S.W.3d 73, 76 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (holding that it lacked jurisdiction over interlocutory appeal when trial court did not expressly or implicitly rule on jurisdictional challenge). Therefore, we overrule Flynn's first issue.

### 2. With regard to the second issue, Flynn failed to raise a fact issue on two elements of his breach-of-contract claims.

In his second issue, Flynn contends that the trial court erred in granting the motion for summary judgment on his breach-of-contract claims. In response to his claims, HCEDC filed a hybrid motion for summary judgment—a traditional motion for summary judgment combined with a no-evidence motion. *See City of Magnolia 4A*

*Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017). As stated above, we will review the no-evidence motion first. *See Ford Motor Co.*, 135 S.W.3d at 600.

In its no-evidence motion, HCEDC contended that there was no evidence of any of the elements of Flynn's breach-of-contract claims. The elements of a breach-of-contract claim are the existence of a valid contract, performance or tendered performance by the plaintiff, breach of the contract by the defendant, and resulting damages to the plaintiff. *Old Am. Ins. Co. v. Lincoln Factoring, LLC*, 571 S.W.3d 271, 282 (Tex. App.—Fort Worth 2018, no pet.); *see USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). To establish the first element—a valid contract—the following must be shown: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds on the essential terms—or mutual assent, (4) consent to the terms, and (5) execution and delivery of the contract. *Silva, Otting & Silva, LLC v. Donna Econ. Dev. Corp. 4A*, No. 13-20-00499-CV, 2022 WL 16993563, at *5 (Tex. App.—Corpus Christi–Edinburg Nov. 17, 2022, no pet.) (mem. op.) (citing *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.)). Mutual assent, in the case of a written contract, is generally evidenced by the signatures of the parties and delivery with the intent to bind. *Id.* (citing *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007)).

### a. There was no evidence of a valid contract.

With regard to the first element of a breach-of-contract claim—existence of a valid contract—the motion alleged that "[n]either of the Agreements were approved

11

by the City Council . . . as required by law" and "[t]here was no valid renewal of the Agreements." According to HCEDC, both the PMA and the PSA expired by their own terms on May 14, 2006, and neither Agreement was extended by HCEDC. Moreover, HCEDC contends that because the Texas Local Government Code required the expenditure of funds by HCEDC to be approved by the "corporation's authorizing unit," both Agreements required approval by the City Council, which did not occur. *See* Tex. Loc. Gov't Code Ann. § 501.073.

Flynn responded that the Agreements were negotiated between him and the lawyers for the City, the City's law firm recommended the approval of the Agreements, HCEDC approved the Agreements, the City Council made up the membership of the HCEDC Board, the parties operated under the Agreements from 2004 until they were terminated, and HCEDC paid for many of Flynn's invoices. Flynn additionally argued that HCEDC "did not present any evidence that the agreements were not approved." Finally, Flynn pointed to a May 12, 2006 letter from Tom Muir, HCEDC's Executive Director, stating that the Agreements were continuing.

Flynn's response to the no-evidence motion for summary judgment consisted only of his affidavit and portions of his deposition. As pertinent to the "no valid contract" element, Flynn averred in his affidavit, "As a result of the work between me, [the City's attorneys,] and the City Manager, we entered into the two written contracts [ ] in 2004." Further, "[t]he parties continued to operate together under those

contracts until [HCEDC] notified [me] by letter dated December 21, 2010, that it was

giving me 30 days' notice, as required by the agreements, and that the agreements

were going to be terminated as of January 19, 2010."

As set out above, both Agreements contained the following paragraph:

Unless sooner terminated as provided herein, this Agreement shall continue in effect, until 5-14-06 or ___ (2) years from the effective date hereof, and thereafter, shall renew for successive one (1) year terms upon approval of the HCEDC. This agreement shall terminate automatically upon written agreement between HCEDC and Manager.[5] In addition, after May 14, 2006, this Agreement may also be terminated upon thirty (30) days written notice delivered by Manager to HCEDC or by HCEDC to Manager; provided, however, that no such notice of termination delivered by HCEDC shall be effective unless such notice has been approved by a three-fourths (3/4) super majority vote of HCEDC.

The words "upon approval of the HCEDC" were interlined and initialed by both

parties.

With regard to the initial approval of the Agreements by HCEDC or the City

Council, Flynn provided the following testimony at his deposition:

Q. Okay. Did the [HC]EDC approve this contract?

A. Yes.

Q. Do you remember when?

A. It's signed on May 14, 2004.

Q. Do you know when they approved the contract?

---

[5]The first page of the PMA identified the "Manager" as "Flynn & Company." The first page of the PSA identified the "Manager" as "SFC Services."

13

A. I would have to indicate that this is the only evidence I have to indicate when they approved it at this time.

Q. Did the city council approve it?

A. At the time I believe the [HC]EDC members were the city council.

. . . .

Q. So do you remember if it was approved by the city council?

A. I don't at this time.

. . . .

Q. Was the project management agreement approved by the city council?

A. I don't recall at this time. Again, it was approved in accordance with review and recommendations of [the law firm].

As evidence supporting renewals of the Agreements, Flynn testified about the letter from Muir, but did not attach the letter to his summary judgment response. However, HCEDC attached the letter to its motion. The May 12, 2006 letter was from Flynn to Muir, on Flynn's letterhead, and provided in relevant part:

> This is in reference to the Professional Services Agreement and the Project Management Agreement, both dated May 14, 2004, by and between [HCEDC] and [Flynn], respectively.
>
> Under section 6 of the Agreements, the initial term of the Agreements runs through May 14, 2006. Provisions are included for the renewal for successive one year terms upon approval of the HCEDC. In the meantime, the Agreements are continuing, subject to the provisions in section 6 that allow for termination upon 30 days written notice by either party. Kindly confirm my understanding of our discussions on

this by signing a copy of this letter as provided below and returning same to me for my files.

The letter bears an illegible signature under the words,

> Acknowledged this
> 16 of May, 2006
> HALTOM CITY ECONOMIC DEVELOPMENT CORPORATION
> By: _____

When asked at his deposition what the letter did, Flynn responded, "This document confirms that the executive director, Tom Muir, agrees and confirms my understanding that my contracts continued after May 14th, 20[06]." When asked if the letter agreement was approved by HCEDC's board of directors, Flynn replied,

> A. This letter agreement is between myself and the executive director, who is also a board member of the [HC]EDC, and simply states that the attorney for the city and the [HC]EDC made this determination and recommended it to the board.
>
> Q. Do you know if the board approved this letter agreement?
>
> A. I assume they did. They didn't terminate the contract.
>
> Q. Is Tom Muir a voting member of the board?
>
> A. He's a - - he's executive director.
>
> Q. So he's not a board member?
>
> A. I think he's termed an ex-official [sic] member. I continued to serve for four years plus after this correspondence, and the [HC]EDC continued to pay me during this time period. So my conclusion is they concurred with the city attorney's findings and recommendations on the matter.

15

First, we note that any alleged acknowledgement by Muir occurred two days after expiration of the Agreements. Second, neither Agreement allowed approval of contract extensions by Muir, HCEDC's Executive Director.

Rather, upon their expiration, both Agreements specifically stated that they could be renewed for successive one-year terms "upon approval of the HCEDC." HCEDC's Articles of Incorporation[6] expressly provided that it was governed by a board of directors: the "affairs" of HCEDC "shall be managed by a board of directors which shall be composed of seven persons appointed by the City Council of the City." Moreover, the Articles required four members of the board to constitute a quorum.

In addition, Flynn provided no evidence that the City approved any expenditures allegedly due him under the Agreements. *See* Tex. Loc. Gov't Code Ann. § 501.073(a) (requiring the authorizing unit of an economic development corporation to "approve all programs and expenditures of a corporation"). Such approval must be shown by a vote of the City Council.

---

[6]According to the Articles, HCEDC was "organized for the purposes of benefiting and accomplishing public purposes of, and to act on behalf of, the City [defined in the Articles as the 'City of Haltom City, Texas'], for the promotion and development of industrial and manufacturing enterprises to promote and encourage employment and the public welfare of the City, and the Corporation may issue bonds on behalf of the City for the financing, development and operation of projects as defined in the [Development Corporation] Act."

A city may contract only upon express authorization of the city council by vote of that body reflected in the minutes. *City of Bonham v. Sw. Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.—Texarkana 1994, writ denied); *see City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003) ("Cities can express and bind themselves only by way of a duly assembled meeting."). "A city's governing body may not delegate the right to make decisions affecting the transaction of city business." *City of San Benito*, 109 S.W.3d at 757 (quoting *Cent. Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 613 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.)). However, cities may "delegate to others the right to perform acts and duties necessary to the transaction of the city's business, but can do so only by resolution or ordinance, by a majority vote." *Id.* (quoting *Cent. Power & Light Co.*, 962 S.W.2d at 613).

Here, Flynn produced no evidence that HCEDC's board of directors ever approved an extension of the Agreements after their initial expiration or delegated to Muir the authority to extend the Agreements. Muir's acknowledgement of Flynn's letter is not proof of HCEDC's approval. And even if HCEDC had approved the extension of the Agreements, Flynn presented no evidence that the City Council approved any of the expenditures required under the Agreements. *See Silva, Otting & Silva, LLC*, 2022 WL 16993563, at *6 (holding that evidence that the city commission approved the contract had no bearing on whether the economic development corporation took any separate action mutually assenting to the terms of the agreement); *see also Rosenberg Dev. Corp.*, 571 S.W.3d at 753 (Hecht, C.J., concurring)

17

(stating that "since an EDC's expenditures must be approved by its municipality, a judgment against an EDC in any circumstances may not be enforceable" (citing Tex. Loc. Gov't Code Ann. § 501.073(a)). Therefore, Flynn failed to present evidence of a valid contract with HCEDC, an essential element of his claims. *See Silva, Otting & Silva, LLC*, 2022 WL 16993563, at *5.

### b. There was no evidence of damages.

Even if Flynn had provided evidence of a valid contract, he must also have provided evidence of damages resulting from the breach of the contract. *See Old Am. Ins. Co.*, 571 S.W.3d at 282. Neither his deposition nor his affidavit provided such evidence.

At his deposition, Flynn was repeatedly asked to explain his damages.

Q. . . . So what does the [HC]EDC owe you under this agreement? How has the [HC]EDC breached this agreement?

. . . .

A. I'd have to see the list of claims to see if they relate to this contract or the other one.

. . . .

Q. So you've seen an invoice sometime in the past, not lately, but in 2011, that had an amount on it that you weren't paid?

A. Yes.

Q. Okay. You don't remember that amount?

A. No, not at this time.

18

. . . .

Q.  Okay.  So for Item Number 1 on Page 6 of your petition, how much money does the [HC]EDC owe you?

A.  I'm not certain.

Q.  Why aren't you certain?

A.  I've submitted the invoice for that.

Q.  Which invoice?  What number?

A.  I couldn't tell you.

. . . .

Q.  So you've seen an invoice sometime in the past, not lately, but in 2011, that had an amount on it that you weren't paid?

A.  Yes.

Q.  Okay.  You don't remember that amount?

A.  No, not at this time.

. . . .

Q.  So Brian Humphreys hasn't been paid for the work that he helped you with to purchase the property or the property associated with - -

A.  I have not been reimbursed for paying that fee.

. . . .

Q.  So you don't know how much money - - you don't know how much money you're seeking for Item Number 1?

A.  I don't recall at this time.

. . . .

19

Q. You've got 22 items for which you're seeking payment. I'm trying to figure out what those are because I have no idea.

A. Okay.

. . . .

Q. So how much money does the [HC]EDC owe you for under Paragraph 6 and 7 of the project management agreement?

A. The amounts on the invoices that have been submitted for those expenses.

Q. And you don't have copies of those invoices?

A. We've requested copies from you, and you have not provided them.

Q. That's not what I asked you. I said do you have copies of those invoices.

A. I haven't seen them lately. They should have been in the 35,000 documents that we provided, and that's a lot of documents to go through.

. . . .

Q. And you don't remember?

A. Not specifically at this time.

In his affidavit contained in his summary judgment response, Flynn simply averred, "I have been damaged by more than $2,000,000 as a result of the HCEDC'S failure to pay my invoices."[7]

_____

[7]Both before the trial court and on appeal, Flynn's argument regarding damages is contained in one identical paragraph:

20

Conclusory statements are insufficient to raise a genuine issue of material fact on a challenged element and will not defeat a no-evidence summary judgment motion. *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 507 (Tex. App.—San Antonio 2013, pet. denied); *see Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (stating that conclusory affidavits do not raise fact issues). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894 (Tex. App.—Texarkana 2009, pet. denied).

Here, Flynn's affidavit testimony that his damages are "more than $2,000,000" is conclusory and insufficient to defeat summary judgment. *See Fraud-Tech, Inc. v. Choicepoint, Inc.*, No. 2-05-150-CV, 2006 WL 1030189, at *5 (Tex. App.—Fort Worth Apr. 20, 2006, no pet.) (mem. op.) (finding affidavit testimony that appellants were entitled to reimbursement of out-of-pocket expenses of $24,000 on their breach of contract, fraud, and conversion claims was conclusory and constituted no evidence to defeat summary judgment); *see also Jones v. Coppinger*, 642 S.W.3d 51, 62 (Tex. App.—El

[HCEDC] next alleges that Flynn is not entitled to recover damages for his claims under the Project Management Agreement. In his deposition, he was asked what the [HC]EDC owed him under the Project Management Agreement, and his answer was that he would need to see the list of claims to see if they relate to the Project Management Agreement or to the other agreement. (Flynn Depo. P. 18) The attorney taking his deposition showed Flynn the petition he had filed, and Flynn indicated that there were personnel management costs involving an assistant he had hired named Brian Humphrees [sic] for which he had not been reimbursed. He then identified additional claims from his deposition that related to the Project Management Agreement. (Flynn Depo. P. 18-30)

Paso 2021, no pet.) ("When a plaintiff's claim for damages is based solely on speculation or conjecture, summary judgment is appropriate."). Moreover, Flynn pointed to no specific evidence of damages before the trial court or on appeal. *See Marston v. Blackbeard Operating, LLC*, No. 08-23-00166-CV, 2024 WL 5099204, at *6 (Tex. App.—El Paso Dec. 12, 2024, no pet.) (mem. op.) (affirming no-evidence summary judgment after stating that appellants "needed to point to specific evidence supporting their claims" and "[t]hey did not do so at the trial court or on appeal").

Under Rule 166a(i), a no-evidence motion for summary judgment "must" be granted "unless the respondent produces summary judgment evidence raising a genuine issue of material fact." Tex. R. Civ. P. 166a(i). Once HCEDC filed its no-evidence motion for summary judgment, the burden shifted to Flynn to produce evidence raising a genuine issue of material fact on the elements specified in the motion. *See id.*; *Timpte Inds., Inc.*, 286 S.W.3d at 310. However, Flynn did not provide any evidence in his response (1) that either HCEDC approved the extension of the Agreements or the City Council approved the expenditures or (2) of his damages from the alleged breach of the Agreements. Because Flynn failed to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact on these elements of his breach-of-contract claims, summary judgment was proper. *See King Ranch, Inc.*, 118 S.W.3d at 751.

Having determined that Flynn did not raise a fact issue as to two elements of his breach-of-contract claims, we need not address the remaining elements of his

breach-of-contract claims. *See* Tex. R. App. P. 47.1. And because Flynn failed to overcome his no-evidence burden, we need not address the traditional motion for summary judgment to the extent it addresses the same claims. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). We overrule Flynn's second issue.

## IV. CONCLUSION

Having overruled both of Flynn's issues, we affirm the trial court's order granting summary judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: February 6, 2025